Tanner CHRISLER, Jr. a minor, by his next friend, Tanner Chrisler, Sr., Plaintiff-Respondent,

v.

HOLIDAY VALLEY, INC., Defendant-Appellant.

No. 39467.

Missouri Court of Appeals, St. Louis District, Division One.

March 20, 1979.

Hiram W. Watkins, Robert J. Albair, Clayton, for defendant-appellant.

James E. Hullverson, Hullverson, Hullverson & Frank, Inc., Steve Ringkamp, St. Louis, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from a judgment against it and in favor of plaintiff in the amount of $2,300,000 based upon a jury verdict. We affirm.

No challenge is made to the sufficiency of the evidence to support the verdict nor is any claim of excessiveness made. Plaintiff, seventeen years old at the time of the accident, was injured when he dived into defendant's commercially operated swimming pool. The water depth at the place of injury was approximately three feet. Plaintiff trotted to the edge of the pool and dived in. The dive was a "normal" or "regular" one, neither a "belly-flop" nor a deep dive but more like the former than the latter. In the water plaintiff felt something strike his thighs and his head went down and his feet up. The "something" was a metal chain, tautly stretched, located several inches below the surface of the water. Plaintiff's head struck the bottom of the pool causing spinal cord damage which has left plaintiff a quadriplegic, almost totally paralyzed from the collarbone down. He is unemployable, incontinent in both bladder and bowel, sexually dysfunctional, confined in a wheelchair, and reliant on assistance to handle almost any activity or function except eating. His condition is permanent. His hospitalization was approximately nine months in length and included both treatment and therapy of a painful nature.

Plaintiff's submitted theory was negligence based upon (1) a failure to warn of the shallowness of the water and that diving was dangerous and (2) the presence of a metal chain below the water without adequate warning of that presence. There was evidence to support both claimed theories of negligence. Defendant introduced evidence of warning signs, of the absence of causal relationship between the presence of the chain and the injury, that the injury occurred solely because plaintiff dived too deeply and that plaintiff was guilty of contributory negligence.

■ Defendant raises nine points of alleged error. Two of those points relate in whole or in part to damages. Plaintiff asserts that neither has been preserved because of defendant's failure to claim excessiveness of the verdict arising from such purported errors. We are aware of the theory of law asserted by plaintiff. In *Miller v. Haynes*, 454 S.W.2d 293 (Mo.App. 1970) [3], this court expressed its reservations about the doctrine that error relating to damages is deemed non-prejudicial in the absence of an allegation of excessiveness. We continue to have difficulty reconciling the rule enunciated and the established doctrine that incompetent evidence on a material issue is presumed prejudicial. In most litigation, and particularly in personal injury actions, there is a large range between the damage extremes of inadequacy and excessiveness. Within that range a jury has virtually unfettered discretion to determine the damages incurred and is under no obligation to, and in fact is prohibited from, specifying what amounts have been attributed to each of the various elements of damage. Past and future pain and suffering, embarrassment and humiliation, future care and medical treatment, loss of or reduction in employment opportunities and many other factors, do not lend themselves to precise calculation. It is not only possible, but probable, that erroneously admitted evidence on damage issues could well increase or decrease the amount of the jury verdict substantially without taking the total verdict beyond either of the extremes. Under those circumstances imposing a requirement that the error be shown to have caused excessiveness is to allow actual prejudicial error to stand without redress. In short, it is not necessary that error cause a verdict to become inadequate or excessive for it to be prejudicial. However, the latest decisions of our Supreme Court still apply the rule and we must do so. *Chambers v. City of Kansas City*, 446 S.W.2d 833 (Mo. 1969) [12–14]; *Myers v. Bi-State Development Agency*, 567 S.W.2d 638 (Mo. banc 1978) [7]. Here, however, one of the points (the "insurance question") does not relate solely to damages and the other (concerning loss of future earnings) deals with such large amounts of money that we would be

compelled to find the verdict excessive if the evidence was improperly admitted.

We deal with those points first. Defendant contends that the trial court erred in allowing plaintiff to inquire of the venire panel whether any of them had any financial interest in or was connected or associated with Aetna Casualty and Surety Company. Defendant's complaint is that the limit of coverage of the Aetna policy was $50,000 which had already been offered in settlement of plaintiff's claim and that the amount was *de minimis* in view of the injuries involved in this case. Defendant additionally asserts that the trial court erred in thereafter refusing to allow defendant to advise the venire panel of the limit of coverage.

▮ Plaintiff had the right to determine whether any member of the venire panel had an interest in the insurance company which had an interest in the outcome of the litigation. See *Bunch v. Crader*, 369 S.W.2d 768 (Mo.App.1963); *Swift v. Bagby*, 559 S.W.2d 635 (Mo.App.1977). That right was not lost because the amount of that interest, although substantial, was a relatively small amount of the potential liability. The fact that Aetna had an interest in the outcome of the litigation warranted the inquiry to the panel. The amount of the interest was immaterial. See *Ternetz v. St. Louis Lime & Cement Co.*, 252 S.W. 65 (Mo. banc 1923); *Clayton v. Hydraulic Press Brick Co.*, 27 S.W.2d 52 (Mo.App.1929). We find no error in the action of the trial court.

▮ Defendant's remaining point concerning damages alleges error in refusing to strike the testimony by Mrs. Anna Maly, an employment counselor for the Missouri State Employment Service. Mrs. Maly testified that it was her job to find employment for hard-to-place persons including those with handicaps. In that capacity she was familiar with the employment opportunities for handicapped persons. She then testified as an expert that plaintiff was permanently unemployable. On cross-examination, Mrs. Maly testified that she had had only one or two paraplegics or quadriplegics as clients in the last ten years and that she had been unable to place them. Upon this testimony defendant sought to strike Mrs. Maly's testimony on the basis that she was not an expert on para- and quadriplegics. This misconceives the nature of Mrs. Maly's expertise. She was an expert on employment opportunities, particularly those for hard-to-place people including people with handicaps. It was about those opportunities that she was testifying and she was aware of the requirements for a vast number of jobs. Her slight experience with para- and quadriplegics did not affect her expertise on employment opportunities, at most, it affected the weight to be given to her testimony. *Pate v. St. Louis Ind. Packing Co.*, 428 S.W.2d 744 (Mo. App.1968) [4, 5]; *Edwards v. Rudowicz*, 368 S.W.2d 503 (Mo.App.1963) [4–8]. This also disposes of defendant's ancillary point that the testimony of plaintiff's economics expert should not have been permitted because it was based upon Mrs. Maly's testimony. We find no abuse of the trial court's discretion in allowing the testimony of both these experts.

▮ Defendant also complains of the trial court's action in permitting Dr. Gabrielson, an expert witness on swimming and diving, to describe a "normal dive." It is contended that such testimony invaded the province of the jury. Plaintiff's dive had been described by other witnesses as a "normal" dive. Dr. Gabrielson testified that in a "normal" dive the individual reflexively bends slightly at the waist and knees as he enters the water. This is a matter not within the experience of the average juror and was properly the subject of expert testimony. The dynamics of diving and the configuration which an untrained diver such as plaintiff would reflexively assume was important to the jury in deciding the case. It tended to explain why plaintiff's thighs struck the chain and how such contact changed plaintiff's direction so as to drive him to the bottom of the pool. We find no abuse of the trial court's discretion. *McConnell v. Pic-Walsh Freight Co.*, 432 S.W.2d 292 (Mo.1968) [12].

■ Defendant also premises error upon its assertion that the trial court allowed Dr. Gabrielson to testify to "National Swimming Pool Standards and Customs" because no such standards had been introduced into evidence. This is simply not accurate. Dr. Gabrielson was a swimming and diving coach and a consultant on swimming pools to architects, municipalities, school, federal and private agencies for 27 years and had viewed "thousands" of pools. He testified that certain conditions at defendant's pool, including the chain, were unsafe and not in accord with the usual customs of the industry. He did not testify to any "national standards" because defendant's objections to such testimony were sustained. The testimony allowed was permissible expert testimony on a relevant matter. *Gatzke v. Terminal Railroad Assn. of St. Louis,* 321 S.W.2d 462 (Mo.1959) [2–4].

■ Defendant also premises error on the trial court's refusal to allow cross-examination of a lay witness, who had taken swimming and life-saving courses, about whether he had been taught that it was dangerous to dive into water of an unknown depth. We are unable to understand what relevancy this question had. The witness had testified to what he had seen at the pool on the day of the accident. The issue before the jury was plaintiff's contributory negligence, not that of the witness. The witness' knowledge could shed no light upon the propriety of plaintiff's actions.

■ Defendant's next point is that the court erred in permitting plaintiff to present rebuttal evidence of an expert nature concerning the physics of fluid resistance and the physical effects from striking a chain under water while diving. Admission of rebuttal evidence is a matter largely within the discretion of the trial court. Rebuttal evidence is evidence which tends to disprove new points first opened by the opposite party. *Peters v. Dodd,* 328 S.W.2d 603 (Mo.1959) [8–11]. Even if the evidence could have been introduced in the case in chief, the trial court may permit it to be offered in rebuttal. *Kelly v. Kansas City*

*Public Service Co.,* 335 S.W.2d 159 (Mo. 1960) [1]. Here the matter of the physics of fluid resistance first arose when defendant produced an expert on the subject during defendant's case. Plaintiff's expert was called in rebuttal to this testimony. This was proper. *Willard v. Robertson,* 129 S.W.2d 911 (Mo.1939) [2]. We know of no rule which requires a plaintiff to call, during his case in chief, every conceivable witness who might contradict a potential defense witness.

■ Defendant's next point alleges error in the failure of the trial court to declare a mistrial because of a statement made by plaintiff's attorney during closing argument. Objection was made to the statement and was sustained. No further relief was requested and none was given. We fail to find plain error in the court's failure to declare an unrequested mistrial.

■ Defendant also asserts that the trial court erred by including in the plaintiff's verdict-directing instruction the word "lifeline." The instruction was M.A.I. 22.03 modified and began as follows:

"Your verdict must be for the plaintiff if you believe: First, there was a shallow area with a chain lifeline without floats in the defendant's pool, and as a result, the pool was not reasonably safe for patrons, and   .   .   ."

It is contended that the inclusion of the word "lifeline" (1) assumed a controverted fact, (2) was misleading and confusing and (3) was a technical term requiring definition. Plaintiff's evidence was that the chain was a "lifeline" serving as a barrier to prevent children from going beyond a certain point or to mark a breakpoint in the pool. Defendant contended the chain was a "divider." There was evidence that a "lifeline" should have floats attached to it, whereas a "divider" need not have. We are not convinced that a jury would have been precluded from finding negligence in the maintenance of an undisclosed underwater chain whether it is delineated lifeline or divider. However that may be, the jury was required to find the chain was a life-

line. We cannot conclude that an instruction which requires a jury to find a specific fact has assumed as true that controverted fact. Such a contention is a non sequitur.

■ Nor, do we believe the use of the word "lifeline" was confusing or required definition. There was considerable evidence put before the jury about lifelines, dividers, floats, breakpoints and explanations of what those terms meant. The term "lifeline" was not suddenly sprung on the jury in the instruction and we cannot conclude it was confused by the term. Additionally, if defendant believed the term needed definition it could and should have offered an instruction defining the term. *Gallaher-Smith-Feutz Realty, Inc. v. Circle Z Farm, Inc.*, 545 S.W.2d 395 (Mo.App.1976) [5, 6]. We find no error.

■ Defendant's final point is that the court erred in failing to include in the contributory negligence instruction the following language: "or failed to acquaint himself with the depth of the water at the point of his dive before diving; . . ." The instruction did submit that a verdict should be returned for defendant if plaintiff negligently dove into the pool where the pool was marked "no diving" and "3" or if plaintiff negligently failed to keep a careful lookout into the water into which he was diving.

■ In *Boll v. Spring Lake Park, Inc.*, 358 S.W.2d 859 (Mo.1962) and *Rigdon v. Springdale Park, Inc.*, 551 S.W.2d 860 (Mo. App.1977), it was held that a commercial swimming pool patron has "a duty to exercise ordinary care to avoid known or appreciated dangers and to discover conditions of danger which a prudent person in the exercise of ordinary care under similar circumstances would discover . . ." *Rigdon, supra.* l.c. 864. Such a patron, however, is under no duty to make a critical examination of the facilities, and may rely to some extent upon the assumption that the pool owner would not invite the patron to use a dangerous facility. In *Rigdon, supra*, we held it error for the contributory negligence instruction to include language very similar to that which defendant contends should have been included here.

■ Unlike *Boll* and *Rigdon* the water here was not murky; quite the contrary it was so clear that the depth could not be ascertained by looking into it. The pool was designed with a "compound" slope, i. e.: the bottom sloped both toward the center of the pool and toward the end of the pool. The pool near the sides was therefore shallower than in the center. Plaintiff saw friends of his about 30 to 35 feet from the side of the pool with water up to their shoulders. Because they were directly in front of the point where plaintiff intended to enter the water and because of the location of an elevated life guard stand in close proximity to the point where plaintiff entered the water, plaintiff believed the water to be four or five feet deep. Under the circumstances we find no affirmative duty upon the plaintiff to conduct a critical examination to determine the depth of the water. There was no error in the trial court's refusal to include the heretofore quoted language in the contributory negligence instruction.

Judgment affirmed.

WEIER, C. J., and SNYDER, P. J., concur.