VAN HORN LODGE, INC., a corp., Dan Barnett and Howard Groff, Appellants,

v.

Gerald F. AHEARN and Donna L. Ahearn, husband and wife, and Marjorie E. Severance, Appellees.

No. 3274.

Supreme Court of Alaska.

June 29, 1979.

Michael N. White, Constance A. Bastian and Timothy H. Stearns of Legal Clinic of Timothy H. Stearns, Anchorage, for appellants.

Joseph W. Sheehan, Fairbanks, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

## OPINION

CONNOR, Justice.

Van Horn Lodge, Inc. (hereafter VHL) appeals from a judgment entered upon four jury verdicts: one awarding the Ahearns damages for interference with their leasehold interest, one compensating Marjorie Severance for money owed her, and two denying VHL recovery on its claim.

VHL is a closely held Alaska corporation formed in 1969. The chronology relevant to the present dispute began in 1973, at which time the principal shareholders, directors, and officers of VHL were Harold Seymour, Harold Bryant, and Rowe Swain.

In May of 1973, VHL entered into a general agreement whereby appellee Marjorie Severance became the manager of Van Horn Lodge. The Lodge consisted of a bar, restaurant, and hotel located just outside the Fairbanks city limits. Subsequently Severance proposed buying out Seymour, Bryant, and Swain and a written agreement was signed in April of 1974. Transfer of ownership was to be contingent upon full payment by Severance.

On August 20, 1974, Severance leased the Lodge to appellees Gerald and Donna Ahearn, who immediately assumed full management of the facilities. Severance had informed the Ahearns that she owned the controlling shares of VHL and the lease was signed by Severance on behalf of VHL as the landlord. Severance's authority to enter into the lease was a major issue at trial, where her testimony was that Bryant, Swain, and Seymour knew and approved of the lease prior to its execution.

Severance failed to make her final stock purchase payments by the designated date of October 1, 1974, though it appears such payment was attempted. C. Anthony Ellwood, at that time the corporation's accountant, testified that the corporation directors voted to dismiss her as manager of the Lodge. Ellwood, Seymour, and Bryant went to the Lodge the next day and found the Ahearns in possession.

What occurred then is disputed. Ellwood contended that the directors spoke with a single voice, informing the Ahearns that the lease was invalid, but that they could remain in possession on a month to month basis, using the terms of the Severance/Ahearn lease as a "guideline." Ellwood admitted that the Ahearns were to be permitted rental offsets for renovations then underway in three rooms of the Lodge, in addition to offsets for two months of rent paid to Severance by the Ahearns, as well as a credit for property tax which they had also paid.

The Ahearns contended that while Ellwood insisted that the Severance lease was invalid, Seymour and Bryant agreed to honor the lease. Appellants did not call Seymour or Bryant as witnesses to dispute this. In addition, the Ahearns testified that all those present at this meeting gave them permission to undertake necessary repairs, expenses, and certain improvements, and to deduct the cost of these from the $3,500 monthly rent, because the directors were interested in seeing a "modern building" emerge. The Ahearns contend that, as lessees, they never would have expended substantial sums for remodeling absent such an agreement.

From the time they signed the lease until April 1, 1975, the Ahearns paid no rent directly to VHL. They had paid two months rent to Severance, and several

monthly payments to the First National Bank of Fairbanks to prevent foreclosure on the Lodge's mortgage. The Ahearns insist there was no rent owing in this period, and submitted proof at trial that their August to April offsets which the corporation had authorized were in the amount of approximately $41,000.00.

Between the October meeting and March, 1975, the Ahearns remained in possession. In early March, Barnett, a director of VHL, delivered a new contract to the Ahearns which, in effect, sought to void the Severance/Ahearn lease and substitute one more favorable to the corporation.

The Ahearns refused to sign, and on March 19, 1975, the corporation sent them a notice to terminate. The termination date given was August 31, 1975, and the notice was expressly given pursuant to paragraph 11 of the Severance/Ahearn lease. The notice stipulated that conformity with the Severance/Ahearn lease would be required by the corporation.

On March 25, 1975, through their attorney, the Ahearns notified the corporation of their election to extend the lease for a second year to August 31, 1976, pursuant to paragraph 3 of the Severance/Ahearn lease. In a subsequent summary judgment, the superior court, Blair, J., voided paragraph 11 of the lease and found that the Ahearns had made a valid election. The court's order also effectively voided a second notice of termination, by which the corporation had attempted to have the Ahearns out by June 6, 1975. These rulings have not been appealed by VHL.

After the March 19 termination notice, friction between the Ahearns and the corporation intensified. Each party has alleged various forms of harassment by the other in the nineteen months between March, 1975, and the October, 1976 trial. The most significant actions in this period, however, concern the Van Horn Lodge liquor license.

The majority of the revenue received by the Lodge was generated by the bar. Both Severance and the Ahearns operated the bar under the auspices of a liquor license issued to VHL for use at the Lodge only.

In the spring of 1975, appellant Barnett requested that the Alcoholic Beverage Control Board remove the license from the Lodge premises. In July, VHL filed a claim for delivery of its liquor license under Civil Rule 88(c). The following month the superior court issued an order for prejudgment delivery of personal property and the Ahearns complied with it. This order was dissolved in February of 1976, and VHL was ordered to return the license to the Ahearns. The corporation, however, had turned over the 1975 license to the Alcoholic Beverage Control Board, and no 1976 license was issued since the corporation had failed to file for renewal. Thus, from August, 1975 to August, 1976 the Ahearns derived no income from the bar. This loss of income is the primary source of damages sought by the Ahearns at trial.

The pleadings in the case were consolidated. At the time of trial in October of 1976, the following claims remained: VHL sought damages from Marjorie Severance for various breaches of her management contract, and for any damages resulting from her unauthorized lease to the Ahearns; Severance, by amendment at trial, counterclaimed for corporation debts that she had paid while manager; VHL primarily sought back rent from the Ahearns, and consequential damages for wrongful occupation of the premises; and the Ahearns counterclaimed for wrongful interference with their leasehold interest. A jury awarded the Ahearns $1.00 in punitive damages and $60,872.67, awarded Severance $21,248.90, and awarded VHL nothing.

VHL seeks to set aside all four jury verdicts and raises twelve distinct issues on appeal.

Of these questions, only two require discussion in this opinion. We find the others lacking in merit, and therefore do not address them. We will discuss only whether it was error to permit Severance to amend her answer, after the jury was empaneled, to include her counterclaim against VHL, and whether the court erred in refusing to allow testimony offered by VHL to rebut the Ahearns' counterclaims.

## I.

In her original answer to VHL's complaint on September 2, 1975, Severance included a counterclaim for corporation debts which she had paid in the amount of $38,000.00. VHL answered this counterclaim on September 25, 1975. When the four separate complaints comprising the present case were consolidated in November, VHL's repleaded complaint, filed in February, 1976 failed to state a claim against Severance. VHL amended its complaint in March to include the claim against Severance. However, Severance's answer neglected to replead her counterclaim.

When trial began in October of 1976 Severance's attorney, apparently in his opening statement, informed the jury of the counterclaim. Sometime later that same day, after examining his own first witness, VHL's attorney advised the court that the counterclaim had not been pleaded. The court noted that no objection had been made during the opening statement. After hearing VHL's argument that it did not know that the counterclaim existed, and that it would be prejudiced if the court allowed amendment, the court permitted the addition of the counterclaim. In response to VHL's contention that it would have engaged in discovery had it anticipated the counterclaim, the court said: "I've seen more discovery done on a fender-bender than [on] this one." VHL did not seek a continuance.

In *Merrill v. Faltin*, 430 P.2d 913 (Alaska 1967), we stated the reasons for liberally allowing amendments under Civil Rule 15. They are:

> "to facilitate a proper decision on the merits of the controversy, and . . . to secure the just, speedy, and inexpensive determination of every action."

*Id.* at 915.[1] The amendment here was necessary in order to have a presentation of the real issues in the case. VHL had asserted a claim against Severance for sad-

dling VHL with certain debts that she had incurred, and Severance's counterclaim was for corporate debts that she had paid from her own funds.

The countervailing factor which had to be weighed by the superior court is whether prejudice would be inflicted upon VHL by permitting the counterclaim.

The trial judge believed that the omission was an oversight. He gave little weight to VHL's claim of surprise, stating, "You certainly knew that [s]he had filed it in the first place." On the record, one possible conclusion is that VHL was hoping to avoid defending against the counterclaim because of an error by Severance's counsel. As the United States Supreme Court has observed: " 'The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome.' " *Foman v. Davis*, 371 U.S. 178, 181, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 225 (1962).

On the ruling made here, we will reverse only for an abuse of discretion. *United States Fire Insurance Co. v. Schnabel*, 504 P.2d 847 (Alaska 1972). Moreover, the discretionary power to permit an amendment should be greater than that to deny it. *Foman v. Davis, supra*, 371 U.S. at 182, 83 S.Ct. 227.

It cannot be said that Severance's counterclaim was a surprise to VHL, as the counterclaim had been pleaded in answer to the earlier complaint, and it went to the heart of the claim asserted by VHL against Severance. It is also notable that VHL did not seek a continuance of trial as a result of the trial court's ruling.[2] On the record before us it is our view that no error, and no abuse of discretion, occurred by reason of the trial court's ruling.

## II.

The court had made it clear at the beginning of the trial that, if it were not conclud-

---

1. *See generally*, 3 Moore's Federal Practice, § 15.08[2] at 875 (1974).

2. Failure to ask for a continuance would not be fatal to this claim of error in all cases, but it is a factor to be considered in determining whether an abuse of discretion was committed.

ed by a day certain, a lengthy continuance would be required and a mistrial would be the likely consequence. On the next to last day of the allotted trial time, VHL advised the court that it intended to call rebuttal witnesses. Since Severance had not yet put on her case, the potential for mistrial loomed large. The trial judge suggested that counsel for VHL get together with the Ahearns' counsel in order to indicate what the rebuttal witnesses would say.

The next morning, the court was informed that counsel for VHL had not heeded his suggestion, that the Ahearns' counsel was not made aware of the content of the rebuttal testimony, and that, therefore, no stipulations had been reached. The court then forbade VHL's rebuttal testimony as a sanction for disobedience of its "order."

If the matter had ended here, the trial court's action would pose a problem. While a court "may make such orders in regard to the failure [to obey an order] as are just [including . . . prohibiting] . . . the disobedient party . . . from introducing designated matters in evidence," Civil Rule 37(b)(2)(B), it is questionable whether the trial court's suggestion could reasonably have been interpreted as an "order."

However, in assessing error, we must consider other material occurrences at trial. VHL made an offer of proof regarding the prospective rebuttal testimony of five witnesses. The court ruled that one witness, Thomas Keever, would not be a proper rebuttal witness. The court agreed to permit rebuttal testimony from appellant Barnett limited to two points, having previously ruled that certain evidence which VHL wanted to introduce through Barnett was not proper rebuttal. VHL has not appealed the trial court's rulings going to the permissible scope of the foregoing evidence. The Ahearns stipulated to the remainder of Barnett's testimony.

■ This leaves the testimony of three witnesses. Appellant Groff would have denied the allegation that he had interfered with the Ahearns' leasehold interest by calling the Health and Fire Departments to complain about conditions at the Lodge. Ahearn had testified about those telephone calls when called as a witness by VHL in its case-in-chief. Groff was called by VHL after Ahearn and was not questioned on Ahearn's allegation. Since rebuttal testimony is generally limited to a reply to new points, *Pauly v. King*, 44 Cal.2d 649, 284 P.2d 487, 494 (1955), the proffered testimony could come in after VHL had rested "only . . . for good reason and in the furtherance of justice." Civil Rule 46(c). The harassment that Groff would have denied formed a very small part, if any, of the Ahearns' claim for damages. It is thus quite unlikely that the trial court would have permitted this testimony to come in, even had there been no "disobedience."

■ Trooper Harris would have testified that the Ahearns took $2,000.00 from the cash box on the day they were finally forced from the premises. According to appellants' brief, such testimony would have served to rebut the testimony of the Ahearns' accountant as to lost profits. Appellants do not say, however, how the witness could have testified as to the source of the funds. VHL also contends this would be impeachment evidence, but the allowance of impeachment-type rebuttal is within the discretion of the trial judge. *Eisner v. Daitch Crystal Dairies, Inc.*, 27 A.D.2d 921, 279 N.Y.S.2d 247 (N.Y.Supp., 1967). In the circumstances we believe that the error, if any, is harmless.

■ In our view, the only proffered evidence of any substance would have been Rowe Swain's testimony in regard to the repairs the Ahearns claimed to have made. However, the offer of proof does not indicate in any way the degree to which Swain would have disputed not only the Ahearns' testimony, but the testimony of witnesses Hatch, Kelly, Trottier and Humphrey, none of whom were contradicted through cross-examination. Moreover, VHL, through Ellwood and Barnett, had already admitted to allowing the greater part of the offsets claimed by the Ahearns. Thus, the offer of proof fails to indicate the degree, if any, to

which VHL was prejudiced by the failure to permit Swain to testify. Finally, in its case-in-chief, VHL, through Barnett, had already introduced rebuttal evidence regarding the claimed repairs by the Ahearns. Again, we view any possible error as harmless.

AFFIRMED.

MATTHEWS, J., not participating.