ADVANCED, INC., Appellant,

v.

Michael WILKS and Jody Wilks, Appellees.

No. S–550.

Supreme Court of Alaska.

Dec. 27, 1985.

---

Kenneth D. Lougee, Dennis M. Bump, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellant.

Joseph W. Sheehan, Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

In June of 1980, Advanced, Inc. (Advanced) contracted with Michael and Jody Wilks to construct an elliptical earth-sheltered concrete house. The original contract price was $81,875.00. The Wilks were not satisfied with the workmanship and thereafter brought suit against Advanced for breach of contract, breach of warranty, and violation of the Unfair Trade Practices and Consumer Protection Act, AS 45.50.471. The jury returned a special verdict in favor of the Wilks, awarding damages of $150,402.75.[1]

On appeal Advanced does not contest the jury's determination of liability, but argues that the jury's damage award was excessive and based on erroneous instructions. Advanced also contends that the superior court erred in denying its motion for remittitur or new trial and erred in not excluding certain testimony after discovery violations had occurred. We affirm.

### I. Damages.

Among the instructions the jury received on damages was the following:

In determining damages to the plaintiffs, if you find that repair is feasible, you must compute the reasonable cost of putting the house in the condition which

---

1. This award represents the cost of repairs.

was promised by the contract. If you find that repair is not feasible, you must compute the reasonable difference between the value the house would have had if it had been built as promised, and the value the house actually has. In other words, there are two different methods which can be used to decide the amount of the plaintiffs' damages.

The normal way of deciding what damages to award to the plaintiffs is to give them the reasonable cost of putting the house in the same condition it would have been in had the defendant kept his promise.

However, if you find that it would be impractical and grossly wasteful, in proportion to the benefit to be gained, to repair the house so that it matches its promised condition, then you should not use this first method. Instead, for all conditions that can be repaired at disproportionate and wasteful expense, you should use the following method of measuring damages. You should award to the plaintiffs a sum which represents the difference between the value of the performance that the defendant promised and the value of the performance that the defendant actually gave.

If you decide that some defects are repairable, but that others can be repaired only at a disproportionate and wasteful expense, then you should use the cost of repair to measure damages for the repairable defects, and the drop in value to the measure of damages for the remaining non-repairable defects.

Advanced does not object to the above instruction, and for good reason. It is well established that the cost of completion or repair is the preferred measure for calculating damages when a building contractor breaches a construction contract by incomplete or defective performance. As Professor Dobbs notes in his treatise, this measure "gives the landowner the ability to get, with the damages awarded, a performance equivalent to what he has contracted for. This is a strong and worthy policy and naturally commends itself." D. Dobbs, Remedies, § 12.21, at 899 (1973). *See also* 5 Corbin, Contracts §§ 1089–90 (1964). The diminution in value measure is to be used only when necessary to avoid unreasonable waste (as where a house would have to be torn down to replace plumbing that deviated only in a minor way from contract specifications).[2]

The jury specifically found that Advanced had not substantially performed, and that it would not be impractical and grossly wasteful for the Wilks to repair the house.[3] The jury also found, in accordance with the Wilks' testimony, that the value of the house without any defects would be between $150,000–$160,000.

■ Advanced's primary contention is that, given the above finding as to the value of the house as promised, the award of $150,402.75 for the cost of repairs is excessive as a matter of law. More specifically, Advanced argues that the jury should have used the value measure of damages and awarded the difference between the value of the house as promised and the present value of the house. The jury, however, had before it insufficient evidence to calculate damages according to the value formula. It was specifically noted on the special verdict form that the jury could "not determine" the actual value of the house with defects. If Advanced thought that the cost of repairs was an unreasonable measure of damages given what it believed to be the relatively small decrease in value resulting from the breach, it clearly had the burden to present evidence from which the jury could find the diminution in value. The house was appraised twice, once at $98,000 in May, 1980, before construction began, and once at $114,000 in November, 1980, before completion of the

---

**2.** *See Jacob & Youngs, Inc. v. Kent,* 230 N.Y. 239, 129 N.E. 889 (N.Y.1921).

**3.** The concepts of economic waste and substantial performance are highly dependent on one another; whether performance is substantial or not may be determined in part by the additional value that repairing would confer. D. Dobbs, Remedies § 12.21, at 899.

project. Many of the defects in the workmanship, however, did not become apparent until later. No appraisal was made of the house at the time of trial in 1984. The jury thus correctly concluded that it could not determine the present value of the house as constructed without resorting to impermissible speculation.

■ Further, Advanced incorrectly states the rule of law. An owner's recovery is not necessarily limited to diminution in value whenever that figure is less than the cost of repair.[4] It is true that in a case where the cost of repair exceeds the damages under the value formula, an award under the cost of repair measure may place the owner in a better economic position than if the contract had been fully performed, since he could pocket the award and then sell the defective structure. On the other hand, it is possible that the owner will use the damage award for its intended purpose and turn the structure into the one originally envisioned. He may do this for a number of reasons, including personal esthetics or a hope for increased value in the future. If he does this his economic position will equal the one he would have been in had the contractor fully performed.[5] The fact finder is the one in the best position to determine whether the owner will actually complete performance, or whether he is only interested in obtaining the best immediate economic position he can. In some cases, such as where the property is held solely for investment, the court may conclude as a matter of law that the damage award can not exceed the diminution in value. Where, however, the property has special significance to the owner and repair seems likely, the cost of repair may be appropriate even if it exceeds the diminution in value.[6]

■ Advanced also contends that the court erred in giving the following damage instruction to the jury.

The plaintiffs are entitled to the greater of the following amounts:

(1) If you find that defendant failed to substantially perform its contract obligations, plaintiffs are entitled to the return of the money that they have paid for the construction of the house; or

(2) The costs of repairs and/or any reduction in value of the house.

Advanced argues that the instruction should have told the jury to award the lesser of those amounts. We think the instruction is a correct, if somewhat awkward, statement of the law. When a contractor repudiates a building contract or breaches it in a substantial way the landowner generally has the option to recover restitution rather than damages. D. Dobbs, Remedies § 12.23, at 910.[7] And, of course, when there has been a substantial breach recovery is not limited to the contract price if, as in this case, damages according to the cost of repairs or value measure is greater. A rule limiting recovery to the contract price would destroy the cardinal principle in determining damages in contract cases—that the plaintiff is to be put in as good a position as he would have been in had the defendant kept its promise.[8]

---

**4.** *See* Restatement (Second) of Contracts § 348 comment c (1981).

**5.** As has been pointed out: "many properties, highly prized for the special purposes for which they are designed, are of trivial value [on the market] because only the present owner is in a position to exploit them." 1 J. Bombright, The Valuation of Property 19 (1937); *see also,* Farnsworth, *Legal Remedies for Breach of Contract,* 70 Colum.L.Rev. 1145, 1167–69 (1970).

**6.** The public interest in avoiding the creation of eyesores and possibly dangerous conditions may also work in favor of the cost rule. Of course, absent a decree of specific performance there is no guarantee that the owner will actually use the award to fix the structure, but, as just discussed, in some cases it may be probable that he will do so.

**7.** In some situations, if restitution is recovered the landowner will have to restore to the contractor any improvements made or the value of the improvements.

**8.** *Murray E. Gildersleeve Logging Co. v. Northern Timber Corp.,* 670 P.2d 372, 377 (Alaska 1983); *Guard v. P & R Enterprises, Inc.,* 631 P.2d 1068, 1071 (Alaska 1981).

■ Advanced also contends that the evidence supports the view that the present house could be torn down and replaced with one in conformity for $95,000. If true, this figure would represent the real cost of repair. The question thus, is not whether evidence exists to support this figure, but whether there was sufficient evidence to support the jury's decision to reject this figure, and adopt the amount awarded. We conclude that there was.[9]

## II. Discovery Violations.

■ Finally, Advanced argues that the court should have excluded the testimony of several of the Wilks' expert witnesses because the Wilks failed to supplement their answers to Advanced's interrogatories in accordance with Civil Rule 26(e)(1)(B). This rule of procedure provides that:

> 1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

The superior court offered to give Advanced a recess so that its own experts could re-examine the property in light of the Wilks' experts' revised values, but the offer was declined. Such a remedy for this kind of discovery violation is within the sound discretion of the trial court. *Grimes v. Haslett*, 641 P.2d 813, 822 (Alaska 1982). Advanced fails to show that the additional time would not have cured any prejudice that may have resulted from the Wilks' violation of Civil Rule 26(e).

Therefore, the judgment of the superior court is AFFIRMED.

9. Advanced's argument that the superior court erred in denying its motion for remittitur or new trial is based on the premise that the jury received improper damage instructions. Given that the premise is wrong, we conclude that the superior court acted within its discretion in denying the motion. *Cf. Sturm, Ruger & Co., Inc. v. Day*, 594 P.2d 38, 49 (Alaska 1979), *modified*, 615 P.2d 621 (1980), *cert denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981).