**Bruce SIROTIAK, Appellant,**

v.

**H.C. PRICE COMPANY, H.C. Price Construction Company, ARCO Alaska, Inc., and Gary Townsend, Appellees.**

**No. S–1965.**

Supreme Court of Alaska.

July 15, 1988.

aside a judgment for fraud on the court."

John Suddock, Libbey & Suddock, Anchorage, for appellant.

John W. Pletcher, III, Larry Z. Moser, Pletcher & Slaybaugh, Anchorage, for appellees.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal arises from the denial of a motion for new trial in a personal injury case. Bruce Sirotiak claims he suffered a lower back injury in a slow speed, two-truck collision. At trial, Sirotiak asked for over $1 million dollars in damages; he received approximately $16,000. On appeal he claims that the jury was biased against him and that he was denied the opportunity to present an effective rebuttal case. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. THE ACCIDENT.

On the morning of September 15, 1982, after completing his night shift, Sirotiak was involved in a two-truck accident. While driving an ARCO pick-up[1] on the North Slope, Sirotiak headed northbound on an icy gravel roadway at approximately 15 miles per hour. As he approached an intersection at an alleyway controlled by a stop sign, he saw a pick-up driven by Gary Townsend, an H.C. Price Company (Price) employee, approaching from the east. Sirotiak realized that Townsend was not going to stop for the stop sign; he therefore "tried to move over a little bit" and stepped on the accelerator in an attempt to avoid the collision. Townsend, who had been traveling between 10–15 miles per hour, slowed down at the intersection to approximately 5–8 miles per hour. The two trucks nonetheless collided. The left front of Townsend's truck hit the right rear wheel and quarter panel of Sirotiak's truck.

After the impact both men got out of their vehicles to discuss the accident. Townsend was uninjured and Sirotiak felt all right at the time. Townsend conceded that the accident was his fault and they

---

1. At the time of the accident Sirotiak was employed by Alaska International Constructors (AIC). At that time AIC apparently contracted to perform services for and leased vehicles from ARCO on the North Slope.

then drove back to Sirotiak's work place to inform Sirotiak's supervisor of Townsend's fault.

Two days later Sirotiak went to the infirmary complaining of lower back pain. Shortly thereafter Sirotiak went to see an Anchorage doctor. He never returned to the North Slope.

In Anchorage, Sirotiak saw Dr. J.J. Smith, who diagnosed Sirotiak's problem as low back strain and prescribed pain medication and bed rest. Sirotiak later returned to Minnesota where his care was assumed by back specialist Dr. Matthew Eckman.

### B. THE TRIAL.

Sirotiak filed suit against Price, ARCO and Townsend in September 1984. Before the case went to trial Price and Townsend conceded negligence, but not the extent or severity of injury. A trial was held in Anchorage from September 22 through October 6, 1986.

At trial Dr. Eckman testified that Sirotiak's back appeared to be normal before the accident. Eckman stated that Sirotiak's back showed significant arthritic changes caused by the September 1982 accident, that the process of deterioration would continue, and that he could no longer perform physical labor. Since the accident Sirotiak has earned his living supervising a small logging business and investing in a restaurant/bar.

At Price's request, Sirotiak was examined by Dr. Horton on September 4, 1986. Sirotiak's injury was diagnosed as degenerative disk disease. Horton testified that there were pre-existing degenerative changes that were not significantly aggravated by the 1982 accident.

Additional evidence was introduced at trial suggesting other events caused Sirotiak's back problems. Robert Byman, a deputy sheriff from Minnesota, testified that Sirotiak had an altercation with police officers on December 30, 1983, in which Sirotiak was wrestled to the ground. Marvin Waller, Sirotiak's roomate on the North Slope, testified that Sirotiak may have complained to him of back pain prior to the accident.

Each party introduced expert accident reconstruction evidence at trial. Sirotiak's expert, John Talbott, testified via a video deposition. Relying in part on Sirotiak's and Townsend's statements, Talbott posited a 90 degree collision between the front of Townsend's truck and rear axle of Sirotiak's truck. Sirotiak stated that he was hit broadside in the back of the "box" of his pick-up. Townsend had stated that he pulled through the intersection and hit Sirotiak in the right rear quarter panel. Townsend described the damage to his truck as "it bent just a piece of trim chrome around the headlights."

Talbott theorized that the action of the Townsend truck hitting the right rear panel of Sirotiak's truck caused Sirotiak's truck to spin. That spinning motion carried Sirotiak's upper body forward while his lower body rotated with the vehicle, resulting in his lower spine receiving a twisting jolt. In developing his theory, Talbott assumed as fact a lighter weight truck than was actually driven.

In contrast, Price's expert, James Stirling, posited an angled collision at less than 90 degrees which caused only minor damage to both trucks. Stirling also relied on statements made by Sirotiak, Townsend, as well as Waller and several other Price employees. Consistent with Townsend's statements, Waller and the Price employees told Stirling there was no damage to the front of the Townsend truck except for the left front headlight area.

Under Stirling's theory the fact that the sheet metal absorbed the force of the impact coupled with an angled collision resulted in a gentle rotation of the truck. In addition, Stirling correctly based his calculations on a heavier weight Ford 250 pickup, a factor that would also lessen Sirotiak's rotation. Stirling described Sirotiak's movement in the truck as pushing him backward into his seat much like the forces at work in an airplane takeoff.

Sirotiak learned of Price's theory of an angled collision two days before trial. At that point Sirotiak's expert was out of the

country, having left behind a video deposition containing calculations based on the wrong truck weight and discussions of only the 90 degree collision theory. Sirotiak thus presented his case in chief theorizing a 90 degree collision but without introducing any evidence determinative of a 90 degree collision. Not until after the close of his case in chief did Sirotiak locate an eye witness who could describe damage to the Townsend truck determinative of a 90 degree collision. This witness, Alvin Yanity, was willing to testify that there was notable damage all across the front of the Townsend truck.

Although Yanity's name did not appear on the witness list, Sirotiak attempted to call him as part of his rebuttal case. The trial court excluded Yanity's testimony. As additional rebuttal to the angled collision theory Sirotiak attempted to call three expert witnesses: Dr. Peter Fisher, Dr. Douglas Smith and Dr. Will Nelson. Only Fisher was on Sirotiak's witness list.

Nelson was to defend Talbott's theory as to the 90 degree impact, as well as Talbott's calculation on the rotation of the truck. Nelson was willing to defend Talbott's theory even though Talbott had used the wrong truck weight. Nelson would also have defended Talbott's original theory taking into account Yanity's statement as to truck damage.

The court initially agreed to allow Nelson to testify as a rebuttal witness because of Talbott's unavailability. On the Friday before Nelson was to testify, the court offered Price the choice of deposing Sirotiak's three expert rebuttal witnesses in person or getting written statements from them. Price's counsel opted for written statements. He asked that the reports be available at 10 a.m. on Saturday, in order to afford him time to consult with another expert if necessary. Sirotiak's counsel responded that the reports could be available by noon, and the court compromised on 11 a.m.

The following morning Sirotiak's counsel stopped by the offices of Price's counsel at approximately 9 a.m. to drop off the reports. At that time, the building was dark and the door was locked. Sirotiak's counsel called Price's counsel at 11:08 a.m. He informed Price's counsel that the reports were available immediately. Price's counsel indicated that he would send someone to pick them up.

Monday morning Price moved to strike Nelson's testimony as well as the testimony of the two other experts. Price argued that Nelson's report was insufficient to give it information to cross-examine the witness because it was a mere summary. Price contended that the reports lacked the expert's theory and the basis for the theory. Price also argued that reports were late. Sirotiak defended the contents of the reports. He also explained that he tried to deliver the reports early Saturday morning. Sirotiak argued that the fact that he called Price's counsel at 11:08 to pick up the reports was not reason enough to exclude Nelson's testimony.

The court excluded Nelson's testimony. The trial court agreed with Price that what was produced was an inadequate report. In addition, the court noted that the "report" was late.

The jury found that Townsend's negligence was a legal cause of Sirotiak's injury but awarded only $15,720. Sirotiak had asked for over $1 million in lost income, $17,726 in medical expenses and $7,708 in vocational rehabilitation expenses. Sirotiak moved for a new trial on the ground that he was denied an opportunity to present an effective rebuttal case. The motion was denied, and Sirotiak appeals.

## DISCUSSION

### A. THE TRIAL COURT DID NOT ERR IN DENYING CHALLENGES FOR CAUSE OF VARIOUS PROSPECTIVE JURORS.

Sirotiak's first assignment of error is that the trial court "allow[ed] jurors to serve who were biased against the cause of action and the amount of relief sought." The trial court allowed voir dire questions on the tort reform debate. Several members of the jury panel expressed strong feelings about the need for tort reform and

objected to high damage awards. The record indicates, however, that none of the six prospective jurors Sirotiak challenged for cause sat on the jury.

Three of those challenged for cause were excused by the judge.[2] The trial court denied challenges for cause against John Havard and Alfred Augestad. Sirotiak then excused those jurors by exercising two of his peremptory challenges. Sirotiak used his third peremptory challenge to excuse Jane Winters, who was not challenged for cause. The remaining challenged juror, Todd Fisher, was removed through the grant of "an extra peremptory or for cause." [3] Thus, the narrow issue on appeal is whether the trial judge erroneously denied two challenges for cause[4] and if so, whether Sirotiak was prejudiced by being forced to use two peremptory challenges against jurors that should have been removed for cause.[5]

The determination of a challenge for cause lies in the sound discretion of the trial judge. Alaska R.Civ.P. 47(c). The appellate court will "interfere with the exercise of that discretion only in exceptional

circumstances and to prevent a miscarriage of justice." *Mitchell v. Knight,* 394 P.2d 892, 897 (Alaska 1964). We next determine whether the trial court erroneously denied challenges for cause against Havard and Augestad.

Havard, an engineer, stated that he had preconceptions "towards the ability for someone to sue H.C. Price just because their employee happened to run a stop sign and hit somebody when there was no gross negligence or willful neglect involved." When asked how the fact that Price would have to pay damages would affect him, Havard responded: "If you are waiting for me to say that I think it would affect my judgment, make it impossible for me to be fair, you're not going to hear me say that. I think I could be fair, but I think it would predispose me, ..."

Although Havard indicated that Sirotiak would have to work harder to prove damages to Havard than to the average person, Havard stated "if the damages are proved to be just based on the facts then any number is fair." In response to defense

---

2. The jurors dismissed for cause included: (1) Rana Bennett, who was suspicious of worker's compensation claims and had strong feelings about running stop signs which she felt she could not put aside; (2) Jeannette Haas, who felt very strongly that monetary awards should not be available for anything other than medical and repair bills proven to exist; (3) Eileen Lally, a former employee of Price, who informed the entire panel that a company as fair as Price would have settled this claim if it were any good.

3. The challenge for cause was initially denied against Fisher. Fisher expressed a "fundamental problem" with an award the size of one million dollars. He conceded that it would be hard for him to put his "preconceived notions" aside yet he said that he could be fair despite those feelings. Sirotiak later renewed the challenge. The court then granted Sirotiak an additional challenge stating: "I'll grant you an extra peremptory or for cause[,] however you wish—I'll grant the challenge." Sirotiak then excused Fisher.

4. Sirotiak also argues that even though he did not challenge another juror, Greg Theobald, for cause, the trial court should have removed Theobald *sua sponte. See* Jordan, *Jury Selection,* § 501, at 65–66 (1980) (responsibility for jury impartiality lies with both the trial attor-

neys and the trial court). *See also* 1983 A.B.A. *Standards Relating to Juror Use and Management,* Commentary to Standard 8 at 81. However, unless there is a clear abuse of discretion, we are of the view that if no challenge for cause is made then the challenge is waived. *See Grimes v. Haslett,* 641 P.2d 813, 816 (Alaska 1983).

5. A challenging party must demonstrate that it has used all of its peremptory challenges before prejudice results from the trial court's refusal to excuse a juror for cause. *See McGee v. State,* 614 P.2d 800, 807 (Alaska 1980) *cert. denied* 450 U.S. 967, 101 S.Ct. 1485, 67 L.Ed.2d 617 (1981); *City of Kotzebue v. Ipalook,* 462 P.2d 75, 77 (Alaska 1969). Thus the forced use of a peremptory challenge is not in itself a sufficient ground for a new trial. *See Abernathy v. Eline Oil Field Services, Inc.,* 200 Mont. 205, 650 P.2d 772, 778 (1982). To establish prejudicial error a challenging party must show that the erroneous denial of a challenge for cause forces parties to expend peremptory challenges to their prejudice. *See Wasko v. Frankel,* 116 Ariz. 288, 569 P.2d 230, 232 (1977); *Auriemme v. State,* 501 So.2d 41, 43 (Fla.App.1986) *review denied* 506 So.2d 1043 (Fla.1987); *Crawford v. Manning,* 542 P.2d 1091, 1093 (Utah 1975). Here Sirotiak exhausted his peremptory challenges and would therefore have been prejudiced if the challenges for cause were erroneously denied.

counsel, Havard said he could be fair, set aside his predispositions and follow the judge's instructions.

Augestad shared Havard's antagonism at the concept of suing the deep pocket. However, Augestad did not have negative feelings about injured workers collecting damages. He observed that Sirotiak did not look injured and stated: "I do think it's wrong basically to try for over a million dollars when from appearances, the person does not appear to be injured." Augestad stated he "wouldn't have a problem understanding what [the judge's] instructions would be and follow them. But right now, frankly, I would doubt those instructions ... would end up being much in your favor."

Augestad also felt that his own insurance rates were affected by high verdicts. Augestad stated he was opposed to high contingent fees and gave contradictory statements as to whether those views would affect his decision. Augestad concluded his answers to Sirotiak's questions by agreeing he would do his best to follow the court's instructions "but [he] would find it tough."

Upon voir dire by defendant's counsel Augestad indicated he would evaluate the case differently if the outward appearance of the evidence were different. In other words he stated he would listen to the evidence and instructions and reach a fair conclusion.

Challenges for cause may be taken on the following grounds, among others:

> That the person is biased for or against a party or attorney.
>
> That the person shows a state of mind which will prevent him from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be, and cannot disregard such opinion and try the issue impartially.

> That the person has opinions or conscientious scruples which would improperly influence his verdict.

Alaska R.Civ.P. 47(c)(2), (c)(3), (c)(4).

Sirotiak argues that there was jury bias resulting from the insurance industry's tort reform publicity campaign. We agree that bias as to the size of the verdict can be prejudicial.[6] *See Murphy v. Lindahl,* 24 Ill.App.2d 461, 165 N.E.2d 340, 344–45 (1960); *Atlanta Joint Terminals v. Knight,* 98 Ga.App. 482, 106 S.E.2d 417, 424 (1958).

In general, "bias on the part of prospective jurors will never be presumed and the challenging party bears the burden of proof." *City of Kotzebue v. Ipalook,* 462 P.2d 75, 77 (Alaska 1969) (quoting *Borman v. State,* 1 Md.App. 276, 229 A.2d 440, 441–42 (1967)). Thus, we have said that when analyzing a juror's state of mind it is sufficient that the juror indicates that he or she could be fair and impartial, would allow a justifiable award, and would follow the instructions of the court in arriving at a verdict. *Mitchell,* 394 P.2d at 897. *See also Beech Aircraft Corp. v. Harvey,* 558 P.2d 879, 881 (Alaska 1976) (nine jurors had some familiarity with plaintiffs' decedents, but because acquaintance between the deceased and the jurors was casual and because each juror said he or she could serve without prejudice, we found no bias in denying extra peremptory challenges). *Accord Quincy v. Joint School Dist.,* 102 Idaho 764, 640 P.2d 304 (1981).

Sirotiak urges us to adopt a more stringent standard: that when the cold record reflects bias, the appellate court must be convinced that any subsequent assertion of impartiality is "unequivocal and absolute." *United States v. Nell,* 526 F.2d 1223, 1230 (5th Cir.1976); *Auriemme v. State,* 501 So.2d 41, 44 (Fla.App.1986); *State v. Land,* 478 S.W.2d 290 (Mo.1972); *Williams v. State,* 565 S.W.2d 63, 65 (Tex.Cr.App.1978).

*See Andry v. Cumis Ins. Society, Inc.,* 387 So.2d 1374, 1377 (La.App.1980); Alaska R.Civ.P. 47(c)(12). We view the connection between insurance premiums and high verdicts as no more than general bias as to the size of the verdicts.

---

**6.** The trial court permitted voir dire on jurors' perceived connection between a high award in this case and their own insurance rates. Sirotiak analogizes this perceived connection to Civil Rule 47(c)(12)'s provision for excusing jurors who are financially interested in the litigation.

In the instant case Sirotiak argues the court was too ready to accept those jurors who, while admitting bias, also said they would be fair.

We are not persuaded to adopt Sirotiak's suggestion. First, we conduct our review of the record looking only for abuse of discretion. To require the cold record to reflect "unequivocal and absolute" impartiality intrudes on the discretion granted trial courts because the judge is present and observing proceedings. Second, we doubt the truly honest juror could state unequivocally and absolutely that his or her biases will have no effect on the verdict. All that is required of a prospective juror is a good faith statement that he or she will be fair, impartial and follow instructions.

■ Applying this standard to Havard and Augestad we conclude the trial court did not abuse its discretion in denying the challenges for cause.

Although Havard stated he had a strong predisposition against a person suing a "deep pocket" he said he thought, albeit with difficulty, he could be fair. Sirotiak argues that Havard's statements evidence only pallid acquiescence that the juror could be impartial in spite of strongly held biases. However, we observe that some of Havard's assertions of fairness and ability to follow instructions were in response to Sirotiak's questions and not "pallid acquiescence" to Price's leading questions.

With respect to prospective juror Augestad we realize that he initially responded to Sirotiak's questions by indicating that proof by a preponderance of the evidence would not satisfy him. However, he then stated he "wouldn't have a problem understanding what [the judge's] instructions would be and follow them." In response to Price's questioning Augestad firmly stated he could be fair and follow the judge's instructions.

Because both jurors stated they would be fair, impartial and follow instructions we find no abuse of discretion and no error in the trial court's denial of the challenges for cause against Havard and Augestad.

## B. THE TRIAL COURT DID NOT ERR IN REFUSING TO GRANT A NEW TRIAL ON THE GROUND SIROTIAK WAS DENIED THE OPPORTUNITY TO PRESENT AN EFFECTIVE REBUTTAL CASE.

Sirotiak's second assignment of error is the trial court's refusal to allow Alvin Yanity and Dr. Will Nelson to testify on rebuttal.

■ "[R]ebuttal testimony is any competent evidence which explains, is a direct reply to, or a contradiction of material evidence introduced by ... a party in a civil action." *Riffey v. Tonder*, 36 Md.App. 633, 375 A.2d 1138, 1145 (1977); 6 J. Wigmore, *Evidence* § 1873 (Chadbourn rev. ed. 1976) (usual rule excludes all evidence which has not been made necessary by the opponent's case in reply). *Cf. Van Horn Lodge, Inc. v. Ahearn*, 596 P.2d 1159 (Alaska 1979). The focus of rebuttal is to respond to new points or material first introduced by the opposing party. *Chrisler v. Holiday Valley, Inc.*, 580 S.W.2d 309, 314 (Mo.App. 1979); *Souza v. United Electric Railways Co.*, 49 R.I. 430, 143 A. 780, 782 (1928). Rebuttal should not merely contradict or corroborate evidence already presented, instead it should be evidence in denial of some affirmative fact which the answering party endeavors to prove. *Yeomans v. Warren*, 87 A.D.2d 713, 448 N.Y.S.2d 889 (1982).

The trial court is vested with wide discretion in controlling the order of proof. *American Nat'l Watermattress Corp. v. Manville*, 642 P.2d 1330, 1339 (Alaska 1982). Whether evidence is proper rebuttal evidence lies within the trial court's sound discretion. *See Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 932 (Alaska 1977). "The standard for determining whether a rebuttal witness should be allowed to testify when the witness's name was not timely identified ... [is] 'dependent on whether the testimony sought to be rebutted could reasonably have been anticipated prior to trial.' " *City of Kotzebue v. McLean*, 702 P.2d 1309, 1315 (Alaska 1985) (quoting *Sweat*, 568 P.2d at 932). We have re-

peatedly upheld the trial court's discretion both in excluding and admitting evidence where there has been non-compliance with discovery or the pretrial order.[7]

In general, evidence which is necessary to prove a prima facie case should be presented in the plaintiff's case in chief. 6 J. Wigmore, § 1873, at 678. Although the plaintiff is not required to anticipate defenses as part of its case in chief, *see Houser v. Coursey*, 310 Ky. 625, 221 S.W. 2d 432, 433–34 (1949), the plaintiff may not ignore known defense theories or close his or her eyes to evidence that directly counters plaintiff's prima facie case. *See Pieniewski v. Benbenek*, 56 A.D.2d 710, 392 N.Y.S.2d 732 (1977) (although evidence would have rebutted how accident occurred evidence should be excluded because it corroborated plaintiff's evidence and should have been in case in chief).

■ In the instant case Sirotiak tried to introduce rebuttal evidence that properly belonged in his case in chief. Sirotiak's theory of the case required proof of a 90 degree collision. However, prior to trial Sirotiak did not prepare any evidence determinative of a 90 degree collision. Not until after Sirotiak learned Price intended to argue a less than 90 degree collision did Sirotiak search for evidence determinative of a 90 degree collision. Consequently, Sirotiak did not locate a witness, Yanity, who would testify to truck damage determinative of a 90 degree collision until after the close of his case in chief.

Yanity was not on Sirotiak's witness list. Although Yanity had been interviewed by Sirotiak's investigator some months earlier he was one of several witnesses whose names Sirotiak refused to disclose to Price during discovery. The trial court excluded Yanity. The court reasoned that Yanity was not on the witness list. The court also

found that Sirotiak was not surprised by Price's defense theory. The court reasoned that damage to Townsend's truck "was an issue the day the case started." Townsend had consistently stated that the only damage to the truck was to the chrome around the left front headlight. Sirotiak testified that he may have attempted to swerve to the left to avoid the accident which would have negated a full frontal impact by the Townsend vehicle. Thus, the court implicitly concluded "the testimony sought to be rebutted could reasonably have been anticipated prior to trial." *McLean*, 702 P.2d at 1315. Accordingly, we hold that the trial court did not abuse its discretion in excluding Yanity's testimony.

■ The trial court was initially willing to allow Nelson to testify in rebuttal to Price's expert witness. The court recognized that Sirotiak's principal expert, Talbott, was unavailable to defend his theory. However, as a sanction for preparing an inadequate report and delay in transmitting that report the trial court excluded Nelson's testimony.

The trial court's reasoning in excluding Nelson is unpersuasive. First, the trial court reasoned that the "report" was a mere summary based in part on material the court had already ruled inadmissible. However, the trial court had not ordered a specific detailed report. Moreover, Price chose to receive reports rather than to depose Sirotiak's three expert rebuttal witnesses. Further, Sirotiak offered to let Nelson testify without reference to the inadmissible material. Second, the court excluded Nelson because of the short delay in transmitting the statements from Sirotiak's counsel to Price's counsel. As Sirotiak argues, the court did not specify whether Sirotiak was to deliver the reports at 11

---

7. *Compare State v. Doyle*, 735 P.2d 733 (Alaska 1987) (upheld the court's grant of a continuance instead of excluding evidence because no proof of a willful refusal to comply with discovery); *Advanced, Inc. v. Wilks*, 711 P.2d 524, 528 (Alaska 1985) (discovery sanctions within discretion of trial court) and *Grimes v. Haslett*, 641 P.2d 813, 822–23 (Alaska 1982) (upheld continuance based on belief that preclusion of testimony is too harsh a sanction); *with Yukon Equip., Inc.*

*v. Gordon*, 660 P.2d 428 (Alaska 1983) (as soon as defendant learned of plaintiff's expert's testimony, defendant hired a new expert, not on the witness list, to rebut plaintiff's expert, court properly excluded the defendant's new expert to prevent defendant getting an unfair advantage) and *Drickersen v. Drickersen*, 604 P.2d 1082 (Alaska 1979) (excluded expert opinion testimony that had not been disclosed to opposing counsel until trial).

a.m. or merely have them available at that time. On balance we conclude that excluding a witness as a sanction where there has been a good faith attempt to comply with vague orders is an abuse of discretion.

Nonetheless, we may affirm a judgment on any ground supported by the record even if it was not relied on by the trial court. *Native Village of Eyak v. G.C. Contractors*, 658 P.2d 756, 758 (Alaska 1983). Our review of the record leads us to conclude that the exclusion of Nelson was justified because Sirotiak, as previously determined, was not surprised by the defense theory. Therefore, the testimony sought to be rebutted could reasonably have been anticipated prior to the trial.

## CONCLUSION

For the reasons stated above, the decision of the trial court is AFFIRMED.

BURKE, Justice, dissenting.

I dissent.

The trial court, in my judgment, abused its discretion when it refused to excuse two of the prospective jurors, Havard and Augestad, for cause. I would follow the lead of those courts which have held that reversal is required under these circumstances. *See, e.g., Wasko v. Frankel*, 116 Ariz. 288, 569 P.2d 230 (1977); *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975).