CITY OF KOTZEBUE, Appellant,

v.

Douglas McLEAN, Appellee.

No. 7083.

Supreme Court of Alaska.

July 12, 1985.

As Amended on Denial of Rehearing
Aug. 20, 1985.

Robert C. Erwin, Julie Simon, Erwin, Smith, Garnett & Bendell, Anchorage, for appellant.

Millard F. Ingraham, Fairbanks, and Kennelly, Azar & Donohue, Fairbanks, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

The principal issue presented in this appeal is the extent of a police officer's duty to respond to a life-threatening situation. Appellee Douglas McLean claims that the City of Kotzebue (the city) was negligent in preventing a stabbing of McLean because a Kotzebue police officer failed to promptly respond to a life-threatening phone call made by McLean's assailant prior to the attack. The superior court instructed the jury that the city, acting through its police officers, had a duty to exercise ordinary or reasonable care for the safety of McLean. The city appeals from a jury verdict in favor of McLean. We affirm.

Billy Howarth stabbed Douglas McLean in the stomach at approximately 3:00 a.m., on March 12, 1977, in the Nulukvik Hotel. Shortly before the stabbing, McLean and Howarth had been conversing at the hotel bar.

At about 2:45 a.m., fifteen minutes prior to the stabbing, Officer Danny Shield received a call at the Kotzebue police station. The caller was Howarth, whom Officer Shield knew and recognized. After identifying himself by name, Howarth stated that he "was somewhere between the Golden Whale and the Nulukvik Hotel and he was going to kill a friend of his." Officer Shield testified that he could not identify the "friend" Howarth spoke of nor did he know exactly where Howarth was calling from. The Nulukvik Hotel and the Golden Whale, another Kotzebue hotel with an attached bar, are approximately 200 to 300 feet apart. Both hotels are within a few minutes of the police station.

When Officer Shield received Howarth's call, he was processing a juvenile complaint report on an intoxicated minor he had just arrested. Instead of immediately responding to Howarth's life-threatening call, Officer Shield decided to finish filling out the juvenile report. Officer Shield was not alone in the station. A police dispatcher was also on duty. Although Officer Shield could have left the minor in the dispatcher's care while he investigated the call, he did not do so. In addition, Officer Shield knew that another member of the Kotzebue police department, Officer Carlos Salazar, was working as a security guard at the Nulukvik Hotel in his off-duty hours. Officer Shield did not contact Officer Salazar or have the dispatcher contact him. Officer Shield left the police station at 2:57 a.m. and arrived at the Nulukvik Hotel at 3:00 a.m., three minutes later. Thus, twelve minutes had elapsed between the time of Howarth's call and the time Officer Shield responded to the call. When he arrived at the Nulukvik Hotel, Officer Shield found the wounded McLean lying on the floor of the bar. Officer Shield took custody of Howarth from Officer Salazar.

The Police Chief of Kotzebue, August Nelson, testified that Officer Shield had properly responded to the threatening call. Chief Nelson stated that the police station normally received many threatening phone

calls. He also testified that, in his knowledge, Howarth did not have a bad or dangerous reputation.

A conflict developed when a former police officer, Wilfred Lane, testified in rebuttal that he considered all threats of murder serious and would have taken immediate action. Lane had not been listed by McLean as a potential witness, despite a pretrial order requiring the parties to identify all witnesses and discovery relevant to witness disclosure. The city objected to Lane's testimony on these grounds. However, after McLean's attorney stated that he had not anticipated Chief Nelson's testimony, the city's objection was overruled.

The city also objected to the admission of a telephonic deposition and a jury instruction concerning damages. These objections were overruled.

At the close of McLean's case, the city requested a jury instruction limiting a police officer's duty to prevent crime to situations where a "special relationship" existed. This relationship was defined as existing only when the police had placed the victim in danger and then failed to provide protection. The superior court rejected this requested instruction and instructed the jury that the city owed a reasonable duty of care to McLean.

> You are instructed that under the circumstances of this case the defendant City of Kotzebue, acting through its police department, had a duty to exercise ordinary or reasonable care for the safety of plaintiff Douglas D. McLean.

The jury returned a verdict in favor of McLean and awarded him damages of $180,000.[1]

## I. DUTY OF CITY POLICE

The city claims that by providing protection, the police discharge a duty owed to the public at large, not to specific individuals. Therefore, individuals may not recover damages based on police failure to protect them, absent a "special relationship." We rejected this "public duty" doctrine in *Adams v. State*, 555 P.2d 235, 241–42 (Alaska 1976), and now decline to resurrect it.

### The Public Duty Doctrine

In Alaska sovereign immunity is statutory. AS 09.50.250 protects the state; AS 09.65.070 protects local governments.[2] We

---

1. The city's principal contention is that a new trial should be ordered because the superior court did not give a jury instruction limiting the *police officer's duty to prevent crime to "special relationship"* situations. The city also argues that the verdict below should be overturned because its motions for summary judgment, directed verdict, and J.N.O.V. were improperly denied. These motions were based on the same limited duty contentions made in connection with the jury instruction. In oral argument, the city stated it would confine its challenge to the contested jury instruction. However, our opinion is dispositive of all these contentions.

2. AS 09.50.250 provides:
   *Actionable claims against the state.* A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court. A person who may present the claim under AS 44.77 may not bring an action under this section except as set out in AS 44.77.-040(c). However, no action may be brought under this section if the claim
   (1) is an action for tort, and is based upon an act or omission of an employee of the state, exercising due care, in the execution of

a statute or regulation, whether or not the statute or regulation is valid; or is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused;
   (2) is for damages caused by the imposition or establishment of a quarantine by the state;
   (3) arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.
AS 09.65.070 provides:
   *Suits against incorporated units of local government.* (a) Except as provided in this section, an action may be maintained against a municipality in its corporate character and within the scope of its authority.
   (b) A municipality may not require a person to post bond as a condition to bringing a cause of action against it.
   (c) No action may be maintained against an employee or member of a fire department operated and maintained by a municipality or village if the claim is an action for tort or

have recognized that the legislature has placed certain limits on governmental liability and that courts must work within the bounds the legislature has set.

The public duty doctrine does have an impressive pedigree.[3] But with due respect for those courts in other states which continue to adhere to the doctrine, we think the "duty to all, duty to no-one" rule is outmoded, artificial, and "in reality a form of sovereign immunity." *Id.* at 241. Courts use the doctrine to immunize governments from liability for mistakes which might otherwise be actionable. The arguments used to defend the public duty doctrine are the same arguments raised in defense of general sovereign immunity. *See Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 811 (Minn.1979) (Kelly, J., dissenting); *Riss v. City of New York,* 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860, 863 (N.Y.1978) (Keating, J. dissenting); *Chambers-Castanes v. King County,* 100 Wash.2d 275, 669 P.2d 451, 461 (1983) (Ut-

ter, J., concurring in the result). As we said in *Adams,* to allow the public duty doctrine to provide governments with special protection "would create immunity where the legislature has not." 555 P.2d at 242.

■ In *Cracraft,* the Minnesota Supreme Court observed that private citizens generally have no duty to do the things that the public duty doctrine protects; if governments are to be treated the same as citizens, then governments should not be liable for breaches of duties that citizens do not owe to each other. 279 N.W.2d at 805, 806. The flaw in *Cracraft*'s analysis is that citizens who do the things the public duty doctrine protects may indeed be liable for negligence. If insurance companies, for example, decide to conduct safety or fire inspections of premises they insure, negligent inspections may lead to liability. *See* Note, *State Tort Liability For Negligent Fire Inspection,* 13 Colum.J.L. & Soc. Prob. 303, 337–38 (1977). If a private enti-

breach of a contractual duty and is based upon the act or omission of the employee or member of the fire department in the execution of a function for which the department is established.

(d) No action for damages may be brought against a municipality or any of its agents, officers or employees if the claim

(1) is based on a failure of the municipality, or its agents, officers, or employees, when the municipality is neither owner nor lessee of the property involved,

(A) to inspect property for a violation of any statute, regulation, or ordinance, or a hazard to health or safety;

(B) to discover a violation of any statute, regulation, or ordinance, or a hazard to health or safety if an inspection of property is made; or

(C) to abate a violation of any statute, regulation, or ordinance, or a hazard to health or safety discovered on property inspected;

(2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused;

(3) is based upon the grant, issuance, refusal, suspension, delay or denial of a license, permit, appeal, approval, exception, variance, or other entitlement, or a rezoning;

(4) is based on the exercise or performance during the course of gratuitous extension of

municipal services on an extraterritorial basis; or

(5) is based upon the exercise or performance of a duty or function upon the request of, or by the terms of an agreement or contract with, the state to meet emergency public safety requirements ...

(e) In this section

(1) "municipality" means a home rule borough or city, a general law borough or city of any class, a unified municipality established under AS 29.68.240—29.68.440, or a municipality established by merger or consolidation under AS 29.68.030—29.68.110; the term includes a public corporation established by a municipality;

(2) "village" means an unincorporated community where at least 25 people reside as a social unit.

The city argued in its reply brief and in oral argument that Officer Shield's actions came within AS 09.65.070(d)(2) providing for immunity for discretionary acts. Since the city did not raise this issue in its points on appeal or in its original brief, we do not consider the contention in this appeal.

3. *See Riss v. City of New York,* 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860, 861 (N.Y. 1968); *see also Warren v. District of Columbia,* 444 A.2d 1, 3 (D.C.1981) (en banc); *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 804 (Minn.1979); *Chambers-Castanes v. King County,* 100 Wash.2d 275, 669 P.2d 451 (1983).

ty promises to provide security and fails to prevent criminal conduct from injuring a victim, the private entity may in some cases be liable. *See, e.g., Mullins v. Pine Manor College*, 389 Mass. 47, 449 N.E.2d 331, 336–37 (1983), and the cases cited therein. The basic question is whether the defendant has undertaken a responsibility. If it has, and it has failed adequately to discharge that responsibility, it may be liable to people who have been injured. *See* Restatement (Second) of Torts §§ 323, 324A (1965).[4]

In *Adams*, the state had decided to conduct fire inspections. In the case before us, the city had decided to provide police protection. Fire inspections and police protection benefit the public, but they also benefit individual citizens. We decline to follow a doctrine which automatically insulates government from liability for failure to exercise reasonable care in the delivery of these services.

■ In practice, the public duty doctrine is an injunction against imposing liability on a government without first deciding what the government's duty is. While the public duty doctrine does protect the state from becoming the insurer of all private activity and from undue interference with its ability to govern, we believe that these concerns are better addressed by the tort concept of duty, which limits the class of people which may seek to hold the state responsible for negligent action, and by AS 09.50.250. *See Adams*, 555 P.2d at 241.[5]

### *Duty to Protect McLean* [6]

In *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597, 599 (1982) (en banc) the court observed that it was "well aware that by removing the public/private duty doctrine, we have not solved all of the problems in this area." More specifically, the Arizona court stated:

We deem an ad hoc approach to be most appropriate for the further development of the law in this field. We do not recoil from the thought that the Legislature may in its wisdom wish to intervene in some aspects of this development.

We think the *Ryan* court's approach is an appropriate means of resolving the issue of whether the city had a duty to protect McLean.

" 'Duty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." W. Prosser, *The Law of Torts*, § 53, at 325 (4th ed. 1971). In addressing these policy considerations,

---

**4.** Section 323 provides:
   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
   (a) his failure to exercise such care increases the risk of such harm, or
   (b) the harm is suffered because of the other's reliance upon the undertaking.
   Section 324A provides:
   One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
   (a) his failure to exercise reasonable care increases the risk of such harm, or
   (b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

**5.** For examples of commentary criticizing the "duty to all, duty to no-one" doctrine, see N. Shapo, *The Duty to Act: Tort Law, Power, & Public Policy* 99–120 (1977); 1A C. Antieau, *Municipal Corporation Law* § 11.74, at 11–128 (1983); Comment, *Municipal Liability: The Failure to Provide Adequate Police Protection—The Special Duty Doctrine Should Be Discarded*, 1984 Wis.L.Rev. 499 (1984); Comment, *Police Liability for Negligent Failure to Prevent Crime*, 94 Harv.L.Rev. 821 (1981).

**6.** In its briefing the city has primarily relied on its "duty to all, duty to no-one" argument. Nevertheless, it has also adverted to the considerations we are about to address, as has McLean. The scope of a police department's duty to an individual in McLean's position is squarely before us.

we must first define the class of cases to which our rulings will apply, then weigh the factors which support and oppose the imposition of liability in that class of cases.

■ The record contains several significant facts which help define the appropriate class of cases:

1. Officer Shield received a life-threatening call.

2. Officer Shield knew the identity of the potential assailant—caller.

3. In his conversation with Officer Shield, Howarth identified the likely scene of the crime.

4. Officer Shield did not indicate that he delayed responding because he did not know what he should do. He testified that, according to the training he had received at the state police academy, the proper response to a call such as Howarth's is to "go and check it out."

5. Officer Shield failed to contact another officer who could have investigated Howarth's call before Shield arrived at the scene.

Our resolution of this case might be different given a different factual situation, but, in the class of cases which these facts define, we hold that the city owed a duty of reasonable care to protect plaintiffs such as McLean.

We reach the foregoing conclusion employing the analytical factors adopted in *D.S.W. v. Fairbanks North Star Borough School District*, 628 P.2d 554, 555 (Alaska 1981). In that case we discussed the factors which this court will consider in determining whether an actionable duty of care exists under particular circumstances. These factors are:

[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.[7]

Application of these factors to the case at bar leads us to the conclusion that the city owed an actionable duty to McLean and similarly situated victims. First, harm to a victim was foreseeable. While Officer Shield did not know the identity of the potential victim, he did know that Howarth threatened to kill someone. Moreover, the likely scene of the crime, one of two hotels no more than 300 feet apart and only minutes from the police station, was also identified. It is also significant that Howarth did not call anonymously. Second, there was a significant degree of "closeness of ... connection" between Officer Shield's conduct and McLean's injuries. Officer Shield had been taught that the appropriate response to reported death threats is to immediately investigate them. There were no competing demands on Officer Shield's time or attention or other supervening emergencies that might have excused him from promptly responding to the call. Even if Officer Shield's failure to promptly investigate Howarth's threats had been justified, his failure to call another officer he knew was near the probable scene of the crime was not. In all likelihood, had Officer Shield either called Officer Salazar or responded to the call immediately, McLean would not have been stabbed. Third, in light of these facts, the moral blameworthiness of Officer Shield's unjustified bureaucratic delay in responding to the call is significant. Fourth, the policy of preventing harm to victims who are identifiable by location, if not by name, will be significantly advanced by the imposition of a duty on the city. Recognition of a duty and allowance of civil recovery in this case, however, does not make the city responsible for inju-

---

**7.** The "D.S.W. factors" are derived from *Peter W. v. San Francisco Unified School Distr.*, 131 Cal.Rptr. 854, 859–60 (Cal.App.1976) (quoting *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561, 564 (Cal.1968)). *See also, Adkinson v. Rossi Arms Co.*, 659 P.2d 1236 (Alaska 1983).

ries sustained by victims of criminal activity when the police receive vague, nonspecific calls in which the victim, the assailant, and the assailant's location remain unidentified. Fifth, "the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach," *D.S.W.*, 628 P.2d at 555, favors a ruling that McLean has an actionable claim for personal injury against the city. Imposing a duty of care on the Kotzebue police department will not saddle it with new or undue burdens. Police officers are already trained and required to respond quickly to calls involving death threats. The consequences for the community should be positive, since police officers will simply have an additional incentive to follow their own training and procedures. Sixth, since liability insurance is available, the final *D.S.W.* factor also favors the imposition of a duty on Kotzebue.

Thus, under the particular facts of this case, employing the factors adopted in *D.S.W.*, we hold that the city owed an actionable duty of care to McLean and therefore the jury instruction on duty given by the superior court was proper.

## II. THE TESTIMONY OF WILFRED LANE

■ The city argues that the rebuttal testimony of Wilfred Lane was improper because his name as a witness was not furnished to the city, in spite of the pretrial order requiring identification of all witnesses and discovery directed at witness disclosure. We hold that the trial court did not abuse its discretion by admitting this testimony.

The standard for determining whether a rebuttal witness should be allowed to testify when the witness's name was not timely identified was articulated in *Alaska Airlines, Inc. v. Sweat*, 568 P.2d 916, 932 (Alaska 1977).

8. In *Alaska Airlines*, only the pretrial witness list was available for review. The pretrial order was not designated as part of the appeal record.

Whether a rebuttal witness should be included on a pretrial witness list ... should be dependent on whether the testimony sought to be rebutted could reasonably have been anticipated prior to trial.[8]

The superior court was in the best position to judge the credibility and reasonableness of McLean's attorney's insistent claim that he was surprised by Chief Nelson's testimony and had expected the city to defend on different grounds. Further, the superior court did allow the city to interview Lane before he testified in order to minimize any possible prejudice. In view of these circumstances, we conclude the city has not met its burden of proving abuse of discretion on the superior court's part.

## III. INTRODUCTION OF THE TELEPHONIC DEPOSITION OF DR. HEIN

The only medical testimony presented at trial was the telephonic deposition of Dr. Michael Hein of Anchorage. Dr. Hein was originally deposed orally in Anchorage on October 22, 1981. On October 26, 1981, the superior court ordered that his deposition be excluded because it was taken after close of discovery. However, the superior court stated that either Dr. Hein could testify at trial as a witness or McLean could apply for further discovery.

Since Dr. Hein was unable to testify at trial, a telephonic deposition was conducted on October 27, 1981. The city objected to the use of this deposition on the ground that it was untimely, requesting either that Dr. Hein testify in person or that a continuance be granted, presumably so that his deposition could be taken in Anchorage.

■ The city argues that the admission of the telephonic deposition of Dr. Hein was improper under Alaska R.Civ.P. 32 because his demeanor under examination could not be observed. We hold that tele-

However, the same standard is applicable in either situation.

phonic depositions are admissible when they comply with the requirements of Alaska R.Civ.P. 32.

██ Civil Rule 32(a)(3)(B) provides that the deposition of a nonparty witness may be used for any purpose if the court finds "that the witness is at a greater distance than 100 miles from the place of trial or hearing ... unless it appears that the absence of the witness was procured by the party offering the deposition." Since the distance requirement was satisfied and Dr. Hein was unable to attend because of his medical practice, this section is satisfied.

██ The rules do not specify that depositions may be taken over the telephone.[9] However, Alaska R.Civ.P. 30(b)(4)[10] does provide for the use of audio recordings of depositions. In light of the great distances involved in Alaskan litigation, we hold that the use of telephonic depositions is proper.[11] As with any recorded testimony, the jurors should be instructed that they may consider the credibility of such testimony in light of the fact that they have not seen the witness testify. The superior court did instruct the jury to this effect.

██ The city also argues that the introduction of Dr. Hein's deposition was improper because it was taken after close of discovery as set by the pretrial order. We hold that the superior court did not abuse its discretion in allowing further discovery.

██ Civil Rule 16 authorizes the court to issue a pretrial order to define issues and limit discovery. Civil Rule 16(e) reads

in part: "The order when entered shall control the subsequent course of the action unless modified by the judge to prevent manifest injustice." The pretrial order in the present case reads in part: "Further discovery shall be completed by September 11, 1981.... Exchange of witness lists by August 24, 1981...." Dr. Hein's telephonic deposition was taken on October 27, 1981.[12]

██ Discretion to modify a pretrial order rests in the trial court. In this regard, we stated in *Bertram v. Harris*, 423 P.2d 909 (Alaska 1967) that:

> Whether or not we will interfere with such discretion as in other areas where discretion is involved, depends on whether the discretion was abused, which would be the case only if we were left with the definite and firm conviction on the record that the judge had made a mistake in deciding as he did to exclude or not to exclude....

*Id.* at 917. The city's claim of abuse of discretion is based on the fact that the superior court allowed Dr. Hein's deposition without explicitly amending the pretrial order. In view of the fact that Dr. Hein was unable to testify in person at trial, this alleged omission does not give rise to a definite and firm conviction on our part that the superior court abused its discretion.

## IV. PROPRIETY OF JURY INSTRUCTION CONCERNING DAMAGES

██ The city contends that the superior court erred in refusing to instruct that

---

9. Fed.R.Civ.P. 30(b)(7) does provide for telephonic depositions. This subsection was added by amendment in 1980.

10. Alaska R.Civ.P. 30(b)(4) provides in part:
   The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means....

11. Alaska R.Civ.P. 94 also permits this result. The rule states as follows:
   These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.

12. McLean argues first that the deposition was not "discovery" under the pretrial order, because it was a means of preserving testimony and not of discovering evidence from an opposing party. A reasonable construction of the pretrial order is that it contemplated the completion of all depositions by September 11, 1981.
   McLean also argues that sanctions could not be imposed for violation of the pretrial order since none were specified in the order. We reject such a narrow rule since it would unreasonably limit a trial judge's discretion to define the issues of a case and to prevent abuse of the pretrial process.

taxes should be deducted from any award for loss or impairment of earning capacity. In *Yukon Equipment, Inc. v. Gordon*, 660 P.2d 428 (Alaska 1983), we specifically held that taxes should not be considered in determining future damages. *Id.* at 434–435. Thus, the superior court did not err.

The judgment below is AFFIRMED.