133 F.3d 927
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David MCCLANAHAN; Juanita McClanahan, Plaintiffs-Appellants,
v.
NORTHLAND SERVICES, INC.; United Iron Works, Inc.,
Defendants-Appellees.
 No. 96-35734.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 9, 1997.
Decided Dec. 29, 1997.
 
 Before: WRIGHT, BOOCHEVER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 David McClanahan, a commercial truck driver, was driving a tractor-trailer rig loaded with structural steel on an Alaskan highway when the truck overturned. He and his wife filed a negligence action alleging that United Iron Works, Inc. (UIW) and Northland Services, Inc. (NSI) negligently assembled and packaged the steel that he was hauling, and that the accident occurred because the load shifted and/or disintegrated causing him to lose control of the truck. They appeal an order of summary judgment in favor of UIW and NSI, and an order denying reconsideration. We affirm both orders.
 
 
 3
 UIW fabricated the steel at issue in Seattle, to be sent by barge to Alaska. It arranged for a Seattle trucking company, Sound Delivery Services, to transport the steel from UIW's yard to NSI's Seattle facility. As the steel came off the assembly line, UIW loaded it by overhead crane onto an NSI shipping platform sitting on a Sound Delivery trailer. It used dunnage (pieces of lumber) to separate the stacked steel because pieces of steel slide if in direct contact with each other. UIW did not band the load and never does so. Sound Delivery's truck driver secured the steel to the trailer with nylon straps.
 
 
 4
 When the load arrived at NSI, it had shifted and a piece of steel was sticking out the side. NSI used forklifts to push the load back together before removing Sound Delivery's nylon straps. It then replaced the broken dunnage, reconfigured the steel above the replaced dunnage (the top third of the load), and banded the entire load. It loaded the platform on an ocean barge.
 
 
 5
 When the platform arrived in Anchorage, independent longshoremen unloaded it and put it in NSI's Anchorage freight terminal. NSI loaded the platform onto a flatbed trailer supplied by Sig Wold Storage and Transfer. McClanahan, a driver for Sig Wold, inspected the load, secured the platform to the trailer and began driving the load to Fairbanks. He inspected the load three times during the trip, but nothing appeared out of order and there was no shifting of the load. He drove 66 miles after his third inspection before the accident occurred.
 
 
 6
 Two Alaska State Troopers investigated the accident, one of whom is the state supervisor of commercial vehicle enforcement and regularly assists in determining the causes of commercial trucking accidents. Based primarily on tire marks on the pavement, they concluded that McClanahan caused the accident by operating his truck at an excessive rate of speed.
 
 
 7
 The McClanahans sued UIW and NSI for negligence in Alaska state court. UIW and NSI removed the action to federal court and moved for summary judgment. The court, exercising diversity jurisdiction and applying Alaska state law, granted summary judgment and denied a subsequent motion for reconsideration.
 
 
 8
 This court reviews de novo a grant of summary judgment. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine whether the court correctly applied the relevant substantive law and, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact. Id.
 
 
 9
 To establish negligence under Alaska law, a plaintiff must show that the defendant had a legal duty to use due care, that the defendant breached that duty, and that damage to the plaintiff was proximately caused by the breach. Estate of Day v. Willis, 897 P.2d 78, 81 (Alaska 1995). Alaska courts rely on the Restatement (Second) of Torts § 324A, Liability to Third Persons for Negligent Performance of Undertaking (1965), which provides:
 
 
 10
 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
 
 
 11
 (a) his failure to exercise reasonable care increases the risk of such harm, or
 
 
 12
 (b) he has undertaken to perform a duty owed by the other to the third person, or
 
 
 13
 (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
 
 
 14
 City of Kotzebue v. McLean, 702 P.2d 1309, 1313 n. 4 (Alaska 1985) (quoting Restatement (Second) of Torts § 324(A)).
 
 
 15
 The McClanahans contend that the opinions of expert witness Louis Grill establish genuine issues of material fact as to whether UIW and NSI were negligent in packaging the load, and that the court failed to adequately consider his opinions.
 
 
 16
 Federal Rule of Civil Procedure 56(e) requires affidavits submitted for consideration on summary judgment to "set forth specific facts showing that there is a genuine issue for trial." United States v. Various Slot Machines on Guam, 658 F.2d 697, 701 (9th Cir.1981). "[I]n the context of a motion for summary judgment, an expert must back up his opinion with specific facts." Id. at 700.
 
 
 17
 The district court is obligated under Federal Rule of Evidence 702 to "scrutinize carefully the reasoning and methodology underlying the affidavits offered" when considering a motion for summary judgment. Claar v. Burlington Northern R.R. Co., 29 F.3d 499, 501 (9th Cir.1994). To be admissible, expert testimony must "relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." Diviero v. Uniroyal Goodrich Tire Co., 114 F.3d 851, 853 (9th Cir.1997).
 
 
 18
 Grill's affidavit indicates that he is an expert on truck driving and on loading and securing freight on flatbed trailers. Based on his review of depositions, photos, accident reports, and a sample of banding material with its data, he concluded that both UIW and NSI were negligent in packaging the load of steel. He opined that vibrations in transport caused load instability and disintegration which caused McClanahan's accident.
 
 
 19
 Grill did not say how he concluded that UIW had a duty to package or band the load. The uncontroverted evidence establishes that UIW's only duty was to manufacture the steel and stack it on the shipping platform. It was not responsible for any packaging or transporting. As to the stacking, there is testimony by its shop superintendent that UIW used dunnage in every instance to separate steel loaded on a platform. Sound Delivery's vice president testified that his drivers were responsible for inspecting any load they intended to haul, including the manner in which steel cargo rested upon dunnage in the load, and that they were to request that the shipper reconfigure an improperly arranged load. There is no evidence that the driver of the load at issue expressed any dissatisfaction with it. Sound Delivery's vice president testified that the load may have shifted en route to NSI due to factors unrelated to the way UIW loaded the steel. The NSI employee who reconfigured the load said the dunnage in this load was not of poor quality.
 
 
 20
 The only evidence that UIW breached a duty to McClanahan is Grill's expert opinion that UIW negligently stacked the steel load in layers without sufficient and appropriate dunnage. The court properly concluded that this unsupported opinion did not establish a material issue of fact.
 
 
 21
 As to NSI, Grill concluded that it improperly reconstructed, stabilized, and inspected the load. He gave no factual basis for these conclusions, saying only that after review of photographs, depositions and documentation, "it has become evident to me that the defendants used inadequate and unsafe procedure for packaging the load."
 
 
 22
 The court concluded that Grill's affidavit was conclusory rather than explanatory, did not properly set out the facts relied upon, and failed to explain logically how he reasoned from the known facts to his conclusions.
 
 
 23
 There was uncontroverted evidence that NSI replaced the broken dunnage, reconfigured the steel that lay above the replaced dunnage, and "belly banded" the entire load. McClanahan inspected the load before leaving NSI's Anchorage yard and testified that the banding used to contain the steel was "very snug." A second Sig Wold driver also inspected the load in Anchorage and testified that he found it to be properly packaged, banded, distributed, loaded on the platform, and placed on the truck flatbed. McClanahan checked the load three times en route and found nothing out of order. He stated that he did not feel any shifting of the load while he was driving.
 
 
 24
 The court concluded that the only reasonable inference from the undisputed facts was that NSI adequately secured the load and did not breach its duty under § 324(a) to exercise reasonable care in repacking the load so as not to increase the risk of harm to McClanahan. We agree that Grill's affidavit is not sufficient under either Rule 56 or Rule 702 to establish an issue of material fact as to NSI's breach of duty.
 
 
 25
 The affidavit of Richard Rinker raises an issue of material fact as to the proximate cause of the accident, but does not establish an issue of material fact as to UIW's or NSI's breach of duty. A determination that the accident resulted from disintegration of the load is not sufficient to establish breach by UIW or NSI under a res ipsa loquitur theory because the negligence of third parties is not sufficiently eliminated by the evidence to allow that inference to be drawn. The court properly granted both UIW's and NSI's motions for summary judgment, holding that there was no issue of material fact as to whether they breached a duty to McClanahan.
 
 
 26
 McClanahan also appeals the denial of his motion for reconsideration of the summary judgment and argues that the court refused to consider a new affidavit from Grill. This court reviews for abuse of discretion the decision on both a motion for reconsideration and a motion to reopen or to supplement the record. Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc., 84 F.3d 1186, 1192 (9th Cir.1996).
 
 
 27
 The court denied McClanahan's motion for reconsideration, stating only that it found "no merit in it." The record therefore does not reveal whether the court refused to consider the supplemental affidavit or whether it concluded that the supplemental affidavit was, like the original, insufficient to establish an issue of fact.
 
 This court has said:
 
 28
 Parties are not permitted to file late affidavits in support of their opposition to a motion for summary judgment without invoking Fed.R.Civ.Proc. 56(f) and indicating why they cannot timely file the required affidavits.
 
 
 29
 Claar, 29 F.3d at 504. McClanahan's motion offered no reason for his failure to file timely, acceptable affidavits, or any legal support for allowing him to remedy the deficiency in Grill's affidavit after the summary judgment motion was decided. Furthermore, review of the supplemental affidavit indicates that, like the original, it lacks specific facts to support its conclusions so as to create a material issue of fact.
 
 
 30
 Whether the court considered the affidavit or not, it did not abuse its discretion by denying the motion for reconsideration. McClanahan provided no factual or legal basis requiring it to grant the motion.
 
 
 31
 AFFIRMED.
 
 BOOCHEVER, Circuit Judge, dissenting:
 
 32
 Because I believe there are genuine issues of material fact in dispute as to whether NSI's and UIW's negligence were proximate causes of McClanahan's injuries, I respectfully dissent.
 
 
 33
 I agree that Grill's affidavit is conclusory, and alone would not be sufficient to withstand the defendants' motion for summary judgment. I believe, however, that UIW had a duty to exercise reasonable care when packaging the steel for the same reason NSI had such a duty: because UIW undertook to do so. City of Kotzebue v. McLean, 702 P.2d 1309, 1313 n. 4 (Alaska 1985). The fact that the load started to come apart during the trip from UIW to NSI is evidence from which a jury could conclude that UIW was negligent in stacking the steel.
 
 
 34
 There are facts in the record from which a jury could reasonably infer that NSI failed to exercise reasonable care when it undertook to reconfigure the load of structural steel. The load had already once come undone, which is evidence that it was improperly prepared for transport by UIW. NSI undertook to fix the problem and, as the district court correctly held, it assumed a duty to do so with reasonable care.
 
 
 35
 According to deposition testimony by NSI's workman George "Bud" Strohl, who performed the work, NSI did not reconfigure the entire top third of the load. Instead, NSI lifted the top third with a forklift, repositioned the piece of structural steel that had come loose, and replaced broken dunnage. Then NSI placed the previously removed third of the load, as a unit, back on top. [ER at Tab CR 54, Ex 3, pages 55-58] Thus, most of the load was not, as the district court suggested, "materially altered" at the dock by NSI.
 
 
 36
 Strohl testified that NSI instructed him not to spend too much time on reconfiguring the load. Strohl stated that "there was a big to-do about not doing too much of this, from what my boss told me" and that "they wanted to do it as quick and as fast as we could, so that's what we did." [ER at Tab CR 54, Ex 3, page 54] Asked whether the fact that the customer (in this case, U.S. Fabrication and Erection, Inc.) did not want him to spend too much time reconfiguring the load stuck out in his mind, Mr. Strohl explained:
 
 
 37
 A: That's one thing, like I say, with all shipper loads that we go through Mr. Larue for. And that's generally what he insinuates is that it's a shipper load, you know, they are not going to take the time to start all over and redo it because this is the way they want to do it. So we usually try to get it in and out the best we can.
 
 
 38
 Q: With the least amount of labor you can do?
 
 
 39
 A: Yes, sir.
 
 
 40
 [ER at Tab CR 54, Ex 3, page 651] (emphasis added). A jury could readily infer that Mr. Strohl, who did the reconfiguring job, believed reworking the entire load was not an option available to him under NSI policy even if doing so was prescribed by safety concerns.
 
 
 41
 A reasonable jury could infer that because the top third had already come apart, NSI should have been suspicious of the integrity of the rest of the load, which was packaged similarly, by the same UIW crew, with the same dunnage. One reasonable inference is that NSI should have concluded that in time, with inevitable vibrations and shifting, other parts of the load would come apart. The fact that the bottom part of the load had not yet begun to come apart may have been merely a function of its having been held in place by the weight of the load above it during the relatively short distance it had been transported to that point. A jury could reasonably find that NSI failed to exercise reasonable care in its decision that it was unnecessary to restack the entire load, and that UIW failed to exercise reasonable care in its packaging.
 
 
 42
 Further, I would consider Rinker's affidavit as evidence supporting not merely that disintegration of the load caused the crash, but also breach of duty by UIW and NSI. Were a jury to agree with Rinker that the accident was caused by a disintegrating load, it could infer that the load disintegrated because it was inadequately packaged. We need not employ a formal res ipsa loquitur theory to draw the inference that a load of steel usually does not come apart unless it was improperly configured. While it is true that there may be alternative explanations for why the load came apart, one obvious explanation that a jury could reasonably credit is that the load of steel came apart for a second time because it was improperly configured initially by UIW, and inadequately reconfigured by NSI. Because I believe there was evidence from which a jury could conclude that UIW and NSI breached their duties of care, it is necessary to discuss the issue of causation, as supported by the Rinker affidavit. The Rinker affidavit describes that expert's review of particular facts and his reasons for concluding that the accident was caused by a disintegrating load rather than speeding. The facts considered by Rinker include 1) skipping tire marks indicating a lifting of the semi trailer caused by structural steel falling off the right side of the platform before the accident; 2) the distribution of the spilled load over a "significant distance" indicating load disintegration prior to the vehicle overturning; 3) the relatively short distance the truck slid after overturning, inconsistent with speeding; and 4) the final resting position of the trailer and cab in relation to the curve which was also inconsistent with speeding, and consistent with the load disintegration theory. [ER at Tab CR 54, Ex 13, pages 6-9] A jury could reasonably credit Rinker's interpretation of events over the official police report's conclusion that the accident was caused by speeding, or at least that the improper stacking of the load was a contributing proximate cause. Viewed in the light most favorable to McClanahan, genuine issues of material fact relating to the cause of the accident are in dispute. I believe that McClanahan was entitled to have a jury determine the merits of his suit.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3