*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LYDIA JOHNSON, individually and as personal representative for the ESTATE OF DAVY JOHNSON, | ) ) ) | Supreme Court No. S-16303 |
| | ) | Superior Court No. 3AN-11-10280 CI |
| Appellant, | ) ) | O P I N I O N |
| v. | ) ) | No. 7301 – September 21, 2018 |
| J.G. PATTEE, INC.; MATTHEW OBERLANDER; and JOHN G. PATTEE, | ) ) ) | |
| Appellees. | ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Paul E. Olson, Judge.

Appearances: Jeffrey J. Barber, Barber & Associates, LLC, Anchorage, for Appellant. Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for Appellees.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

WINFREE, Justice.
BOLGER, Justice, dissenting.

## I.    INTRODUCTION

During a personal injury trial the defense expert witness varied from his written report, expressing new opinions to justify a bar employee's use of force. In his report the expert had described the force as a reasonable defensive tactic; at trial he

testified in addition that the bar employee was confronting the plaintiff at the bar entrance, that the bar had a duty to keep the entrance safe and clear, that local police rely on bar personnel to keep the area safe and clear, and that the bar employee was using a reasonable "soft hand escort hold" when the incident occurred. The plaintiff then sought to cross-examine the expert with grand jury testimony by an Anchorage police officer — testimony the expert had been given to review prior to writing his report — that was contrary to key points of the expert's new opinions. The superior court refused to allow this cross-examination, telling the plaintiff that she could try to call the officer as an expert witness. The plaintiff later tried to call the officer as a hybrid expert witness, but the defendants objected because he was not on the plaintiff's witness list. The superior court then refused to allow the officer to testify. The jury found the bar employee was justified in using reasonable force to defend against a trespass.

On appeal the plaintiff argues that the superior court erred by precluding her cross-examination of the expert and her calling the officer to testify as a rebuttal witness. Because we conclude it was a prejudicial abuse of discretion to preclude the officer from testifying as a rebuttal witness with respect to the defense expert's new and unexpected trial opinions, we vacate the judgment and remand for a new trial without reaching the cross-examination issue.

## II.    FACTS AND PROCEEDINGS

### A.    Davy Johnson's Injury; Lawsuits

Davy Johnson suffered a skull fracture after hitting his head on the sidewalk during an incident outside an Anchorage bar. Matthew Oberlander, a bartender assisting the bar's security, had been told by the bar's general manager that Davy was prohibited from reentering the bar or obstructing its doorway. When Davy refused to move from his position on the sidewalk outside the bar's entrance, Oberlander pushed Davy, who fell backward and struck his head on the sidewalk.

Davy filed suit against the bar's owner, J.G. Pattee, Inc., its dominant shareholder, John G. Pattee (collectively Pattee), and Oberlander for negligently or recklessly causing Davy's injuries. Following Davy's death about a year later, the parties stipulated to the substitution of his wife, Lydia Johnson, the personal representative of his estate, in the lawsuit. Lydia also filed a separate suit against the same defendants in her individual capacity; the superior court later consolidated the cases.

**B.    Oberlander's Assault Charge; Officer Witte's Grand Jury Testimony; Protective Order**

Oberlander was charged with criminal assault arising from the incident. Gregory Witte, a police officer who arrived at the scene, testified before the grand jury. Witte had not witnessed Oberlander's push or Davy's fall, but Witte later viewed security camera footage of the incident and testified that Oberlander had pushed Davy up and out from beneath his rib cage to get him off balance. Witte testified that Davy was "clearly standing on the sidewalk portion [that] everybody has a right to walk down" and that, if he was "causing . . . a problem in the public area," the police should have been called. Following Oberlander's acquittal of the assault charge, the superior court issued a protective order precluding the parties "from introducing any evidence or testimony that could lead the jury to conclude that Oberlander was arrested, indicted and criminally prosecuted."

**C.    Preliminary Witness List; Motions In Limine To Strike Police Officers' Testimony; Final Witness List**

Lydia's preliminary witness list identified two police officers other than Witte and "[a]nyone . . . attached to troopers or the Anchorage Police Department or other police agencies [to] testify to liability and give 'other expert opinions' as to why any defendant is liable for negligence  . . . and other opinions." Oberlander filed a

pretrial motion to limit the named officers' opinions. Pattee separately moved to preclude the officers from testifying as experts at all, contending they were merely lay witnesses "in the exact same position as the jurors to evaluate the video." Lydia opposed both motions, arguing that she did not "expect to call police officers unless necessary in rebuttal" and that it would be premature and improper to preclude the officers from testifying as experts. The superior court denied both motions. Lydia's final witness list did not include any police officers, but it did list "[a]ny proper rebuttal witness."

### D.    Examination Of The Defense Expert

After reviewing video of the incident, the grand jury transcript, and other documents, the defense expert, retired Bellevue, Washington police chief Donald Van Blaricom, issued a report stating that "Oberlander did not use excessive force" and that when he pushed Davy it was "an appropriate defensive tactic." The report made no mention of the bar's responsibility to keep the sidewalk area around its entryway safe and clear or whether Oberlander's use of force was appropriate to keep the bar's entryway clear or to stop Davy from reentering the bar.

During the defense case-in-chief, Pattee's counsel asked Van Blaricom a series of questions about whether, in his experience, a bar is responsible to keep the area around its entryway safe and clear. Van Blaricom responded, "Yes. . . . [y]ou have to keep it clear . . . for safety and other reasons." Lydia's counsel asked for a bench conference outside the jury's presence and objected that Van Blaricom was testifying to opinions not disclosed by and outside the scope of his expert report, which had been marked as an exhibit. Lydia's counsel argued in part: "There's nothing in here [— by clear implication Van Blaricom's expert report —] where Mr. Van Blaricom is indicating that sidewalk that the bar had a responsibility to keep clear, there's nothing in here supporting what the basis of his opinions in that regard might be, anything about the location . . . ." The court responded: "I don't quite understand, what is your objection

though?" Counsel replied: "My objection is to his opinion about whether [Davy] was entitled to be where he was at the time is beyond the scope of his report."

The court overruled the objection. In response to further questioning by Pattee's counsel, Van Blaricom then said that a bar has a general obligation to keep its entryway safe and clear and reitrated that "[y]ou have to keep the entryway clear." Van Blaricom later testified that Oberlander had used reasonable force "to clear that space," describing the push as "a soft hand hold, an escort hold," and that Oberlander, as a bar employee, had "a duty to move [Davy] out of that area" to prevent Davy blocking the bar's entryway. Van Blaricom then further explained that "police rely on bartenders and the bar personnel to keep that area clear. . . . [T]his is something that has to be resolved, after all they are trying to conduct a business."

Given the protective order shielding the jury from evidence of Oberlander's prior criminal proceedings, Lydia's counsel made an offer of proof outside the jury's presence of Witte's "contrary" grand jury testimony and sought to cross-examine Van Blaricom "to undermine the credibility and the basis of his report and the findings and some of the testimony" he provided on direct examination. Van Blaricom responded that he did not recall whether he had reviewed Witte's grand jury testimony, that he "would pay absolutely no attention to the officer's interpretation of the video," and that Davy "didn't have a right to be on the sidewalk where he was blocking the entrance."

Oberlander's counsel objected to Lydia's "use [of] Witte's testimony to impeach [Van Blaricom] . . . as if he's another expert." Lydia's counsel argued that Witte's grand jury testimony was relevant to undermine the accuracy of Van Blaricom's expert report and opinions. The court precluded the use of Witte's grand jury testimony in cross-examination. The court explained, however, that Lydia could try to introduce Witte's opinion elsewhere, such as "try[ing] to call [Witte] as an expert," recognizing that it would have to "deal with the objections for failure to [list] him as an expert."

Following the court's ruling, Lydia's counsel reiterated the necessity of using Witte's grand jury testimony to challenge Van Blaricom's trial testimony that the force Oberlander used was reasonable to prevent Davy from trespass, rather than, as Van Blaricom's earlier expert report had concluded, that the force used was reasonable to create defensive space. Lydia's counsel argued that Van Blaricom did not initially come to this "easier" conclusion of trespass in his report because of Witte's grand jury testimony and that using Witte's grand jury testimony in cross-examination was necessary to challenge Van Blaricom's change of opinion. The court again ruled that it was "not going to allow it."

### E.    Preclusion Of Witte From Testifying In Rebuttal

After the defense case closed, Lydia informed the court that Witte was under subpoena to testify and that she "still intend[ed] to offer him for his hybrid witness opinions . . . [of] his evaluation of the video . . . [and] regarding the issue with the sidewalk and whose responsibility it was to clear the sidewalk." Oberlander objected, arguing that Witte was not on Lydia's final witness list, that he was not an expert, and that his "hybrid expert testimony" was "inappropriate" rebuttal testimony because it would only "bolster an opinion from an officer" providing hybrid legal testimony. In response to the court's observation that "[i]t sounds like you're trying to call him as an expert witness," Lydia explained that Witte would be a hybrid witness. The court denied Lydia's request to call Witte as a rebuttal witness.

### F.    Verdict; Appeal

The jury returned a defense verdict, finding the "defendants [were] justified in using reasonable force in defense of attempted trespass." The court entered judgment against Lydia.

Lydia appeals, arguing that the superior court erred by precluding cross-examination of Van Blaricom using Witte's grand jury testimony and by precluding Witte from testifying as a rebuttal witness.

## III.   STANDARD OF REVIEW

We generally review the superior court's "decision to admit or exclude evidence, including expert witness testimony, for abuse of discretion and will . . . reverse an erroneous decision [only] if it affected the substantial rights of a party."[1]

## IV.   DISCUSSION

### A.   It Was An Abuse Of Discretion To Preclude Witte From Testifying As A Rebuttal Witness On The New Issue Of Police Reliance On Bar Employees To Remove Unwelcome Patrons From Bar Entrances.

Van Blaricom testified that Oberlander had "a duty" to move Davy out of the bar's entryway and that "police rely upon the bartenders and the bar personnel to keep that area clear." This was well beyond the scope of Van Blaricom's expert report, which concluded only that Oberlander "did not use excessive force" because the "push [wa]s an appropriate defensive tactic to gain space for time to react to whatever an intoxicated adversary may do next." Van Blaricom's testimony was also contrary to Witte's grand jury testimony that "when [Davy was] standing on a public right of way, the bar doesn't have any more right to enforce that than you or I do" and that the appropriate protocol to deal with "a problem in the public area" is to "call the cops."[2]

---

[1]      *Cartee v. Cartee*, 239 P.3d 707, 721 (Alaska 2010) (first citing *Nelson v. Progressive Corp.*, 976 P.2d 859, 865 n.9 (Alaska 1999); then citing *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000)).

[2]      Pattee and Oberlander argue that Witte's "proffered opinion regarding the public nature of the sidewalks and who controls the sidewalk were questions of law and experts are not allowed to testify as to conclusions of law." Analysis of the sidewalk as a public right of way may be an impermissible conclusion of law or it may be a mixed
(continued...)

It is evident from the record that Lydia made clear to the court the basis for her argument to present Witte's testimony. When Van Blaricom first began testifying about a bar's obligation to keep the entryway safe and clear, Lydia objected that this line of opinion was outside the scope of Van Blaricom's expert report. The report was marked as an exhibit and Lydia explained to the court the limits of Van Blaricom's written opinions. When the court later would not allow Lydia's proposed cross-examination of Van Blaricom with Witte's grand jury testimony, the court said that Lydia could try to call Witte as an expert, subject to the objection that he was not on her witness list. Lydia then emphasized to the court that Van Blaricom had changed his opinion from self-defense — in his written report — to response to trespass — as he would ultimately testify at trial — as a result of Witte's grand jury testimony. The court again denied the cross-examination effort.

After the close of the defendants' cases, Lydia advised the court that she intended to call Witte to testify as a rebuttal witness. The offer was, in part, for a hybrid expert witness opinion regarding whose responsibility it was to clear the sidewalk around the bar; in other words, where the bar ended and the public sidewalk began based on Witte's knowledge of patrolling the area.[3] This was the same point Lydia had raised earlier in the trial during her attempt to cross-examine Van Blaricom with Witte's grand

---

[2]     (...continued)
question of fact and law. But to the extent Witte's testimony would have challenged Van Blaricom's opinion that "police [officers] rely upon bartenders and the bar personnel to keep that area clear," the opinion would not be a legal conclusion but rather Witte's understanding of Anchorage police officers' role in moving or redirecting unwelcome bar patrons from an establishment's entrance. Witte's understanding or experience would be permissible hybrid witness testimony.

[3]     *See Getchell v. Lodge*, 65 P.3d 50, 55-57 (Alaska 2003) (concluding police officer's "fact" and "expert" testimony constituted hybrid expert testimony subject to and permissible under Evidence Rule 702).

jury testimony.[4] After Oberlander and Pattee objected that Witte's name was not on a witness list, the court refused to allow his testimony.[5]

But Lydia's failure to disclose Witte on her witness list does not necessarily preclude Witte from testifying. "The standard for determining whether a rebuttal witness should be allowed to testify when the witness's name was not timely identified . . . [is] 'dependent on whether the testimony sought to be rebutted could reasonably have been anticipated prior to trial.' "[6] Prior to trial Lydia could not have reasonably anticipated Van Blaricom's testimony that Oberlander had a duty to move Davy out of the entryway area and that police rely upon a bar and its personnel to keep the bar's entryway clear

---

[4] We disagree with the dissent's view that Lydia's appeal is forfeited because her attorney did not again express to the superior court that Van Blaricom had testified to opinions outside the scope of his expert witness report and that the rebuttal testimony was necessary to respond to the new opinions. Neither Pattee nor Oberlander made this argument to us in their appellee briefs, so Lydia never had a reason to address it. But it seems clear from the record that Van Blaricom wrote a report with limited expert opinions; the report was marked as an exhibit at trial; defense counsel elicited new opinions from Van Blaricom during the defense case-in-chief; Lydia's counsel objected and pointed to the expert report, but was overruled; Van Blaricom testified that his new opinions were not in the report; and, when Lydia's counsel sought to have a contested rebuttal witness testify — a witness whose name was bandied about in connection with Van Blaricom's new opinions during the testimonial disputes — the parties and the court knew the context for the rebuttal witness offer. This likely explains why Pattee and Oberlander did not make the new argument raised sua sponte by the dissent.

[5] Although the defendants also argued that Witte was an improper hybrid expert, the superior court expressed its familiarity with *Getchell* and focused on the witness list issue.

[6] *Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1277 (Alaska 1988) (alteration in original) (quoting *City of Kotzebue v. McLean*, 702 P.2d 1309, 1315 (Alaska 1985)).

and safe, because those opinions were not included in his expert report.[7]  Rather, the theory of the bar's duty was presented for the first time in the defense's case-in-chief by Pattee's counsel eliciting Van Blaricom's corroborating testimony on direct examination.

Based on Witte's grand jury testimony, his expert trial testimony would have been proper rebuttal testimony.  "[R]ebuttal testimony is any competent evidence which explains, is a direct reply to, or a contradiction of material evidence introduced by . . . a party in a civil action."[8]  Witte's expected trial testimony, as an Anchorage police officer, may have enlightened the jurors to the credibility of Van Blaricom's contrary opinion.  It was an abuse of discretion to preclude Witte from testifying as a rebuttal witness.

## B.    The Error Was Not Harmless.

We must next decide whether the error was harmless.[9]  We "will . . . reverse an erroneous decision [only] if it affected the substantial rights of a party."[10]  The error in refusing to permit Witte to provide rebuttal testimony had "substantial influence on the verdict"[11] because Witte's testimony directly addressed the only issue the jury

---

[7]    *See id.*

[8]    *Id.* at 1277 (quoting *Riffey v. Tonder*, 375 A.2d 1138, 1145 (Md. Spec. App. 1977); 6 Wigmore, Evidence § 1873 (Chadbourn rev. 1976)).

[9]    *See Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 328 (Alaska 2012) (stating that "[e]ven though admission of evidence is erroneous, we will reverse only if the error was not harmless" (citing *Brandner v. Hudson*, 171 P.3d 83, 87 (Alaska 2007))).

[10]    *Cartee v. Cartee*, 239 P.3d 707, 721 (Alaska 2010) (citing *Dobos v. Ingersoll*, 9 P.3d 1020, 1023 (Alaska 2000)).

[11]    *See Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 353 (Alaska 2012) ("The test for determining whether an error was harmless is 'whether on the whole record the error would have had a substantial influence on the verdict of a jury of

(continued...)

ultimately decided on the special verdict form: whether the "defendants [were] justified in using reasonable force in defense of attempted trespass." Witte's rebuttal testimony could have assisted the jury in deciding whether Oberlander should have contacted the police to remove Davy from the sidewalk in front of the bar's entrance rather than using force to move Davy himself. Because the erroneous decision affected Lydia's substantial rights, it is not harmless error.[12]

## V.  CONCLUSION

The superior court's final judgment is VACATED, and we REMAND for a new trial.

---

[11]  (...continued)
reasonable lay[people].' " (alteration in original) (quoting *Noffke v. Perez*, 178 P.3d 1141, 1147-48 (Alaska 2008))).

[12]  Because we are reversing on this issue, we do not need to address Lydia's other claims on appeal.

BOLGER, Justice, dissenting.

The court's opinion reverses this judgment based on Lydia Johnson's appellate argument that Donald Van Blaricom's testimony could not have been anticipated prior to trial. But Lydia did not make this argument to the superior court when she offered Officer Witte's rebuttal testimony, and the superior court did not rule on this argument at that time.

Lydia offered two reasons when she asked to call Witte as a rebuttal witness. First, she asked to call him "simply based on his experience and training, his evaluation of the video for example, to testify in accordance with his observations which he did during the grand jury testimony in this particular instance." Second, she was "offering his testimony regarding the issue with the sidewalk and whose responsibility it was to clear the sidewalk, or you know, basically be responsible for where the bar ended and where the sidewalk and the public sidewalk began."

Lydia did not mention Van Blaricom at all when she made this request. And she did not provide the judge with sufficient information to determine whether she had been surprised by Van Blaricom's testimony. In particular, there was no showing that Lydia ever provided the judge with a copy of Van Blaricom's report.

To preserve an issue for appeal, a party must raise the issue in the trial court and specify the grounds for doing so.[1] In particular, a party who offers evidence based on one theory of admissibility may not argue a "substantially different" theory on appeal.[2] "This preservation rule serves 'important judicial policies: ensuring that there is "a ruling by the trial court that may be reviewed on appeal, . . . afford[ing] the trial

---

[1]     *Ivy v. Calais Co.*, 397 P.3d 267, 276 (Alaska 2017).

[2]     *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 339 (Alaska 2012).

court the opportunity to correct an alleged error," and creating a sufficient factual record so "that appellate courts do not decide issues of law in a factual vacuum." ' "[3]

I agree that Lydia had previously objected that Van Blaricom's testimony was outside the scope of his report. In my opinion, however, Lydia was required to explicitly state her arguments for admission of Witte's rebuttal testimony. At that time, if she had raised the argument that Van Blaricom's testimony could not reasonably have been anticipated, then she could have made an offer of proof to support her argument.[4] Then the defendants could have responded to her argument, and the superior court could have ruled on it. Lydia is not entitled to a new trial because she did not bring this issue to the superior court's attention.

---

[3]     *Ivy*, 397 P.3d at 276 (quoting *Johnson v. State*, 328 P.3d 77, 82 (Alaska 2014) (omission in original) (alteration in original)).

[4]     Alaska R. Evid. 103(a)(2).